## DICKERSON v. LOUISVILLE & N. R. CO.

(Circuit Court, S. D. Ohio, W. D. July 26, 1910.)

No. 6,580.

1. COMMERCE (§ 87*)—INTERSTATE COMMERCE COMMISSION—COMPLAINTS FOR DAMAGES—LIMITATION.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159), which provides

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that all complaints for damages shall be filed with the Interstate Commerce Commission within two years from the time the cause of action accrues. a letter to the commission setting out the facts and containing a substantial prayer for relief by way of damages is a sufficient complaint; no formal pleadings being required by the act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 139; Dec. Dig. § 87.*]

2. COMMERCE (§ 87*)—INTERSTATE COMMERCE COMMISSION—COMPLAINTS FOR DAMAGES—LIMITATION.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 16. 24 Stat. 384 (U. S. Comp. St. 1901. p. 3165). as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159). provides that "all complaints for the recovery of damages shall be filed with the commission within two years from the time the cause of action accrues and not after: * * * Provided that claims accrued prior to the passage of this act may be presented within one year." Held, that a claim which accrued prior to the passage of the act may be presented at any time within two years after the date of its accrual, although complaint is not filed until more than a year after the passage of the act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 139; Dec. Dig. § 87.*]

3. CARRIERS (§ 30*)—INTERSTATE TRANSPORTATION—RATES—CONTRACTS IN VIOLATION OF STATUTE.

Where carriers have filed and published schedules of joint through rates, it is the right of a shipper to have his property transported upon the lines joining in such schedules and at the rates therein specified, and the carrier receiving it cannot avoid its obligation by any contract inserted in its bill of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. § 30.*]

4. CARRIERS (§ 192*)—RATES—DIVERSION OF SHIPMENT—"NECESSITY."

Plaintiff shipped two cars of phosphate rock from a point on defendant's railroad to a point in another state, the rate stated in the bills of lading being that fixed by a joint schedule filed by defendant and other connecting carriers. The bills of lading, however, contained a provision that the carrier should have the right "in case of necessity" to forward by any carrier, and that in such case plaintiff should bear the additional risk and cost. Defendant delivered the cars at Cincinnati to a railroad which was not a party to the through schedule, and plaintiff was required to pay a substantially higher rate. Held, that the fact that there was a congestion of traffic at Cincinnati because of which the connecting carrier refused to receive the cars and their retention by defendant would have brought about a congestion and blockade of its own line did not create a "necessity" within the meaning of the bills of lading which authorized defendant to subject plaintiff to the increased cost, being due to insufficiency of equipment on its own part and that of its connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 864; Dec. Dig. § 192.*

For other definitions, see Words and Phrases, vol. 5, pp. 4726–4737.]

At Law. Action by Edwin S. Dickerson, trading as Woodward & Dickerson, against the Louisville & Nashville Railroad Company. On demurrers to answer and reply. Demurrer to answer sustained, and demurrer to reply overruled.

The complainant, with its principal office in Philadelphia, is engaged in the business, among other things, of buying and selling phosphate rock in car load lots. and in the interstate shipment thereof. The defendant is a common carrier, engaged in the transportation of passengers and property by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

continuous carriage by railroad between points in Tennessee and points in Pennsylvania, over its own lines and the lines of other carriers connecting with it, a portion of its line running through the Southern District of Ohio. December 21, 1904, the defendant published and made effective a tariff of freight rates and named therein as the rate on crude phosphate rock in car load lots from St. Blaise, Tenn., to Riddlesburg, Pa., the sum of $3.45 per gross ton, via Cincinnati, Ohio (Riddlesburg, Pennsylvania, taking the same rate as Baltimore, Maryland) as per the defendant's current East-Bound Fast Freight Line Guide Book, and included in Star Union Line East-Bound Guide Book. The Pennsylvania Railroad Company and the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company were named therein as parties to said tariff, and acquiesced and concurred in the same as published.

On November 23, 1905, and on December 6, 1905, respectively, the complainant delivered to the defendant at St. Blaise two certain railroad cars each containing 58,000 pounds of crude phosphate rock for shipment to Riddlesburg, Pa., consigned to the complainant in cars of the Huntington & Broad Top Mountain Railroad & Coal Company, at the said tariff rate of $3.45 per gross ton; that being the rate published in the tariff, and also noted on the respective bills of lading for said cars. The defendant hauled the two cars to Cincinnati on its own line, and there delivered them without complainant's consent or knowledge to the Baltimore & Ohio Southwestern Railroad Company, which was not a party to the tariff. The cars were delivered at Riddlesburg, but the Huntington & Broad Top Mountain Railroad & Coal Company exacted and collected from the complainant $171.10 and $153.13 as freight charges for transporting the two cars, respectively, which sums aggregated $154.81 in excess of the legal published rate, and caused the complainant loss in that sum. The complainant made demand upon defendant, also upon each one of the other railroads named, for a refund of $154.81, each one of which disclaimed responsibility and refused payment. Complainant then made complaint before the Interstate Commerce Commission. The railroad companies named appeared, filed their answers, and the cause was heard before the commission, and was on February 1, 1909, decided by that tribunal in favor of the complainant. (15 Interst. Com. R. 170.) The defendant was ordered to pay $154.81, with interest from December 26, 1905, to the complainant as reparation caused by misrouting or diversion of the two car loads of rock.

The defendant refusing to pay the amount of the excess, complainant brings this action for the amount thereof, with interest, for a reasonable attorney's fee, and for all proper relief.

The defendant admits the delivery of the cars by it to the Baltimore & Ohio Southwestern Railroad, and as the reason therefor says that at the time the cars reached Cincinnati, the end of its line, it was unable to deliver them to the Pittsburg, Cincinnati, Chicago & St. Louis Railway; that the latter company would not receive and transport the same when they were tendered to it, as it had an embargo upon receiving at Cincinnati any more freight. The defendant alleged, further, that "by reason of congestion of traffic on said Pittsburg, Cincinnati, Chicago & St. Louis Railway and its inability to promptly receive all or any more of the business defendant was then tendering to it, such delivery could not be accomplished, and defendant was thus forced to the alternative of indefinitely holding the said cars, together with a large amount of other business, in its already overcrowded yards and terminals at Cincinnati awaiting the acceptance of same at some indefinite and remote date by the Pittsburg, Cincinnati, Chicago & St. Louis Railway, or of forwarding the same to destination over other routes. Defendant further says that there was an extraordinary volume of traffic moving at that period; that, if defendant had held said traffic, it would have resulted in a congestion and blockade of defendant's own line and facilities; that the situation permitted of no delay, and, realizing its obligation to keep its line open and capable of rendering prompt and efficient service to the public, defendant consulted the Baltimore & Ohio Southwestern Railroad Company with respect to complainant's shipments, and, on being advised by that company that it could handle said shipments, defendant made delivery accordingly, at the same time furnishing transfer slips conveying full and complete information with respect to rates, route, consignee, and destination.

The answer alleges delivery by the Baltimore & Ohio Southwestern Railroad at Riddlesburg, Pa., through connecting carriers and the Huntington & Broad Top Mountain Railroad Company, which collected the amount of freight complainant sues to recover. The answer further avers that each of the bills of lading embodying the contracts of shipment between complainant and defendant contained the following provisions: "Every carrier shall have the right, in case of necessity, to forward said property by any carrier between the point of shipment and the point to which the rate is given. All additional risks and increased expenses incurred by reason of change of route in cases of necessity shall be borne by the owner of the goods and be a lien thereon." The defendant pleads the existence of necessity alleging that the diversion to another route "was imperative in order to prevent the existing blockade of its facilities, which must have resulted to the detriment and loss and disadvantage of the majority of the shippers and consignees depending and dependent upon it for prompt and efficient transportation service, as well as the prompt movement of the United States mail."

The answer avers, further, that the transportation of the two cars was accomplished prior to the passage of the act to regulate commerce as amended June 29, 1906 (chapter 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]), and that the claim of the plaintiff was not filed with the Interstate Commerce Commission in the manner prescribed by law until September 9, 1908, or more than two years after the passage and taking effect of said act to regulate commerce as amended June 29, 1906, which two years expired on August 28, 1906, and that complainant's claim was not presented and that defendant had no notice of it as required by law for more than two years from the time the claims, respectively, accrued.

Defendant further avers that the claim sued on accrued prior to the passage of the act referred to and was not presented within one year after the act became a law, and therefore pleads the statute of limitations. In his reply the complainant says: That on September 5, 1907, he filed with the Interstate Commerce Commission the following communication: "Philadelphia, Pa., September 4, 1907. Gentlemen: On November 23, 1905, we shipped car N. Y. C. & H. No. 65401, 58,000 pounds, and on December 6, 1905, car N. Y. C. & H. No. 24023, 52,000 pounds, both from St. Blaise, Tenn., containing crude phosphate rock consigned to us at Riddlesburg, Pa., care of Huntington & Broad Top Mountain Railroad. These shipments were based on rate of $3.45 per 2,240 pounds and bills of lading show this rate. Upon arrival at destination we were overcharged $154.81, and the Pennsylvania Railroad Company, who collected the money from us, and to whom we presented claim on January 5, 1906, have declined to reimburse us, claiming that the Louisville & Nashville Railroad turned the shipments over to the Baltimore & Ohio Railroad instead of the Pennsylvania Railroad connections, and since the Baltimore & Ohio Railroad could not reach Riddlesburg, when the Pennsylvania Railroad Company did get the cars, considerable extra expense had been incurred. The Pennsylvania Railroad explains further that the Louisville & Nashville Railroad has refused to be responsible for this misshipment, and although the matter has several times been called to the attention of General Freight Agent D. M. Goodwyn, of the Louisville & Nashville Railroad, no attention is paid to us. Hence, we ask your support in our efforts to collect this $154.81 and interest. Thanking you in advance for your consideration, we are, Very truly yours, Woodward & Dickerson, by S. D. Keim. Interstate Commerce Commission, Washington, D. C." That thereafter due notice was given to the defendant, and on September 8, 1908, he filed his formal complaint with the commission, and that the cause was heard and judgment rendered in his favor as set forth in the petition.

Frank O. Suire, for plaintiff.

Wm. G. Dearing and Kinkead, Rogers & Ellis, for defendant.

HOLLISTER, District Judge (after stating the facts as above). The claim of the plaintiff for an overcharge in freight was heretofore submitted to the Interstate Commerce Commission, and all the

points raised on these demurrers were considered and passed upon by that tribunal. Dickerson v. L. & N. R. R. Co., 15 Interst. Com. R. 170.

[1] Defendant complains that the plaintiff's letter to the Interstate Commerce Commission of September 4, 1907, is not such a "petition" as the statute contemplates shall be filed with the commission by a claimant presenting wrongs within the jurisdiction of the commission to redress. There are no formal pleadings prescribed in matters pending before the commission. Act Feb. 4, 1887, c. 104, §§ 13, 17, 24 Stat. 383, 385 (U. S. Comp. St. 1901, pp. 3164, 3168). The letter sets forth in substance all that a formal complaint would contain; and, while it does not ask for a judgment for the $154.81 and interest claimed to be due the plaintiff, yet it does contain a substantial prayer for relief against the defendant by way of damages for the wrongdoing alleged in it. This letter was sufficient to call the commission's attention to all they needed to know as a basis for issuing notice to the defendant to meet the charges, and in fact a notice was regularly issued upon it. This was a sufficient petition.

[2] The defendant claims that the interpretation of the statute of limitations by the commission is not correct as applied to the case before them and now here. Section 16 of the act approved June 29, 1906, provides:

"All complaints for the recovery of damages shall be filed with the commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the Circuit Court within one year from the date of the order, and not after: Provided, that claims accrued prior to the passage of this act may be presented within one year."

Under the contention of the defendant, the first part of the section contemplates future causes of action accruing after the passage of the act, and the proviso has in mind all cases which accrued prior to the passage of the act. Hence the plaintiff's case is barred. Plaintiff's case comes within the literal language of the first part of the section, but is barred if the language of the proviso is applied literally.

Under the proviso the length of time elapsing after the accrual of the claim is immaterial. The claim might be more than two years old at the time of the passage of the act, and yet be saved. The sweeping requirement of two years in the first part of the section is limited so as not to include claims two years or more old at the time of the passage of the act. The purpose of the proviso was to save claims which had existed more than two years prior to the passage of the act, but which were not covered by the first clause. When Congress established these new rights and remedies, some limitation, of course, had to be fixed within which causes might be brought, and it was highly proper that at the start all causes should be provided for. This is done if plaintiff's contention as sustained by the commission prevails, but is not effected if defendant is right. Under defendant's construction, a claim accruing one day before the passage of the act must be presented within one year after that event, but a claim accruing one day after the passage of the act would be given two years within which it might be filed. Such a result would not seem to have been

within the purpose of Congress in making this enactment. Either interpretation does violence to the language of the act, but this court concurs in the view of the commission as expressed in Nicola, etc., Co. v. L. & N. R. R. Co., 14 Interst. Com. R. 199, 206, as applied by the commission to the facts in this case.

[3] The bill of lading issued to the plaintiff contained the clause:

"Every carrier shall have the right, in case of necessity, to forward said property by any carrier between the point of shipment and the point to which the rate is given. All additional risks and increased expenses incurred by reason of change of route in cases of necessity shall be borne by the owner of the goods and be a lien thereon."

It was the opinion of the commission that the right of the shipper was to have his property transported upon the lines and at the rate specified in the rate schedules, that it was not a matter to be dealt with under the ordinary rules affecting contract obligations, but that the carrier was required under the law to carry complainant's property at the published rates, and was not authorized to make any kind of contract with the shipper by which the rates could be increased or decreased. This court concurs in that view.

[4] But, assuming that defendant might take advantage in this particular case of the agreement in the bill of lading, yet it would not seem that such "necessity" as defendant claims existed in this case for diverting the shipment from the prescribed route to another was of a kind which may fairly be said to have been within the contemplation of the parties; and that, even if it were, the defendant is in position to take advantage of it. One may be said to be compelled by necessity when he cannot control a situation himself. Such necessity often arises in railroad traffic, usually by act of God, or vis major, but it could hardly be claimed that a necessity binding on a shipper could arise growing out of the fault of the railroad company itself, as, for instance, if a shipment on another route were made necessary because of an accident on defendant's railroad for which the defendant was to blame. In such a case it would not be proper for the company to plead "necessity", as a reason for charging a greater freight rate than published and agreed upon. Inasmuch as this shipment was to be made on connecting lines of road as a unit expressly by the agreement of the parties and fixed by operation of law, the schedules and the lines being designated and published, it may with as much reason be said that an accident on one of the other lines in the unit growing out of circumstances within control of such line would present such a "necessity" as would permit the charge of a greater sum for transportation than had been agreed upon, and the schedule of which had been published according to law.

The necessity which defendant claims as an excuse for diversion of the shipment to another route and the consequent increase of cost in transportation is twofold in that the P. C. C. & St. L. R. R. Co., by reason of a congestion of traffic had laid an embargo upon receiving at Cincinnati any more freight and would not, and could not, receive from defendant, plaintiff's two cars of merchandise; and that there was an extraordinary volume of traffic at that time, and the two cars if held by defendant would have brought about a congestion

and blockade of its own line and facilities. Whatever reasons, other than vis major, the Pittsburg, Cincinnati, Chicago & St. Louis Railroad might have had for declining to receive cars from the defendant would not create such a "necessity" as would justify the defendant in diverting the shipment to another road. Surely, if the reasons were merely arbitrary, the shipper ought not to be required to pay any more than he had agreed to pay, and the tariff schedules required him to pay, because the defendant was not able to carry out its agreement with him. And, if the reason for refusing was because of a congestion in the traffic of the Pittsburg, Cincinnati, Chicago & St. Louis, that was a circumstance which the railroad men might always have in contemplation if they did not have cars enough to transact the business offered them, and against which they might always provide by having a sufficient number of cars. Surely, if the railroads had not sufficient cars to move their traffic, a shipper presumably without knowledge of the condition should not be required to pay greater freight when the difficulty claimed to be the necessity which would justify it is one of the defendant's or its connection's own creation. Further, while it does not clearly appear that defendant knew at the time it accepted this freight that it would not be received by the Pittsburg, Cincinnati, Chicago & St. Louis at Cincinnati, yet that is probably the situation. They did know, however, that their own volume of traffic was very great and to hold these cars would tend to embarrass their own operations. The inquiries naturally suggest themselves why defendant took this shipment, and was it not its duty to advise the shipper that to get the shipment through within a reasonable time other routes must be employed than the one agreed upon, so that he, and not it, could then determine whether he would pay an additional sum for his shipment? The court is of opinion that no necessity existed such as was within the contemplation of the parties when the bill of lading was issued, and that under the circumstances the defendant is estopped from claiming the existence of any such necessity.

Orders on the demurrers may be taken in accordance with these conclusions.