### HOHENBERG et al. v. LOUISVILLE & N. R. CO.

### No. 5932.

Circuit Court of Appeals, Fifth Circuit.

Feb. 16, 1931.

Bernard Lobman, of Montgomery, Ala. (Sternfield & Lobman, of Montgomery, Ala., of counsel), for appellants.

W. A. Northcutt, of Louisville, Ky., and Robert E. Steiner, Jr., of Montgomery, Ala. (Steiner, Crum & Weil, of Montgomery, Ala., of counsel), for appellee.

Before BRYAN and WALKER, Circuit Judges, and HOLMES, District Judge.

HOLMES, District Judge.

This is a suit to enforce an award of the Interstate Commerce Commission for overcharges which the commission found were paid the carrier on cotton moving in interstate commerce. It was brought by the appellants, M. Hohenberg & Company, against the appellee, Louisville & Nashville Railroad Company, and involves the construction of the lawfully published interstate tariffs, particularly the applicability of the Jones-Kelley combination rule, on shipments originally made from Greenville and other stations in Alabama south of Montgomery. The cotton was concentrated and compressed at Montgomery and reshipped to New Orleans, Mobile, and Pensacola for export as originally intended.

The shipments were made at different times between July 1, 1922, and October 1, 1924, and as the cotton was simply billed to Montgomery, the carrier originally collected only the intrastate local rate from Greenville and other points to the apparent destination. It was there accorded transit privileges and reshipped over the defendant's line with an outbound interstate rate added to the charges already collected.

After the charges so computed were paid, the carrier claimed that they were not the lawful charges provided by the tariffs, and that the shipper would have to pay the difference between the charges actually paid and what it contended was the correct amount, namely, the interstate rate to Montgomery plus the outbound interstate rate to the ports mentioned. Thereupon, the shipper claimed that, if it was an "interstate movement, the through rates from points south of Montgomery to the ports of export must be constructed by the use of the combination rule set forth in the tariffs, and, as there were no such through rates via Montgomery, that the lawful rates on cotton concentrated for compression at that point would be a combination of the local interstate rates to Montgomery plus the reshipping rates to Mobile, or other ports of export, subject to the so-called Jones-Kelley combination rule. This rule provided that in the construction of a through rate, which was the combination of two or more factors, a certain deduction should be made from each factor and only one of these deductions added back to the result. In the instant case the amount to be added and deducted accordingly was 18 cents. It was devised to meet a situation which was brought about by General Order No. 28, made by the Director General of Railroads on June 25, 1918, in order to increase railroad revenues which directed a horizontal raise of 25 per cent. in many rates but a flat increase of 15 cents a hundred pounds on cotton, and, later, on August 26, 1920, by an order of the Interstate Commerce Commission which increased the then existing rates by 25 per cent., making a total increase in cotton rates of 18 cents a hundred. By virtue of these orders each cotton rate was automatically increased by a total of 18 cents. This was easy to apply when cotton moved only once or when there was an applicable through rate, for, whether it moved in intrastate or interstate commerce, if it was a through, continuous, and single movement from beginning to end, there was added to the previously published through rate the sum of 18 cents. However, when there was no such published through rate and two or more commodity rate factors had to be combined to arrive at the total through rate by rail, it is obvious that, if each of the rate factors contained the rate increase of 18 cents, then, if all were added together, this would result in more than one 18-cent increase. Accordingly, the Jones-Kelley rule was published to prevent this inequitable result and to provide a formula to be used when, in order to get a through rate, it was

necessary to combine two or more separate rates which contained the 18¢ increase. This rule, as it appears in the tariff, is as follows:

"Section 1. Where no published through rates are in effect from point of origin to destination on a commodity specified in section 2, and two or more commodity rate factors are used in arriving at the through rate for a continuous rail shipment thereof, such through rate will be arrived at in the following manner: (1) Each separately established commodity rate factor will be reduced by the amount shown in section 2 opposite the name of the commodity; (2) the reduced commodity rate factors will then be added together; (3) to the sum of the separately established commodity rate factors thus obtained, add the amount shown in section 2 opposite the name of the commodity.

"Section 2. Cotton, any quantity (incl. cotton which has been accorded transit, in cents per 100 pounds) 18."

The revenue tariff further provides, in rule 1, that, in the absence of specific provision to the contrary, shipments will be subject to all terminal charges and allowances relating to transit privileges, and, in rule 4, that, "except as otherwise indicated," rates are subject to the Jones-Kelley rule. This rule itself provides: "Except as otherwise indicated herein, and where specific reference hereto is made in tariffs, rules provided herein apply in connection with rates made subject to the rules and embodied herein."

In November, 1924, the plaintiffs filed a complaint with the Interstate Commerce Commission contending: (1) That the rate paid was unreasonable and asking that it be reduced; (2) in the alternative, if the proper method of arriving at the legal rate was not by combining the local intrastate rate to Montgomery with the outbound interstate rate from Montgomery to the ports, that then the two interstate factors were subject to the above set forth Jones-Kelley rule. The contention that the rate was unreasonable was dismissed by the commission and the same was held to be fair and reasonable. The second contention, that the local intrastate factors should be combined with the outbound interstate, was held to be without merit, the commission expressly holding that, since the cotton was destined to ports for export, it moved in interstate and must pay the interstate rate from point of origin into Montgomery in combination with the interstate rate from Montgomery to the ports. As to the contention that the interstate factors were subject to the Jones-Kelley rule, the commission held that they were, and applied the interstate rate to Montgomery, less 18 cents, plus the transit outbound interstate rate to the ports, less 18 cents, and to this total added 18 cents.

For illustration, the tabulation below discloses (1) the rate actually paid by the shippers, based on the factors of the local inbound intrastate rate and the outbound interstate rate; (2) the rate contended by the carrier to be the one legally applicable, based on the factors of the interstate inbound rate and the interstate outbound rate; and (3) the rate actually applied by the Interstate Commerce Commission, in making its reparation award herein sued upon, which is less than and different from what either shippers or carrier contended for at the time as correct:

Rates on Cotton per 100 pounds from Greenville to Mobile and Pensacola.

| (1) | (2) | (3) |
|---|---|---|
| Rate based on intrastate inbound and interstate outbound factors: | Rate L. & N. contends is correct, based on interstate factors inbound and outbound: | Rate upheld by Interstate Commerce Commission by applying Jones-Kelley Combination Rule: |
| To Montgomery.......34½¢ | To Montgomery.......42¢ | To Montgomery, 42 less 18 .................24¢ |
| From Montgomery.....28½¢ | From Montgomery.....28½¢ | From Montgomery 28½ less 18.............10½¢ |
| 63¢ | 70½¢ | 34½¢ |
| | | Add 18 cents .........18 |
| | | 52½¢ |

The final result was the reparation award by the commission which is the basis of this suit.

The cotton without dispute was originally intended for export, with transit privileges at Montgomery, and though it moved under a local bill of lading from Greenville and other points into Montgomery where it was concentrated, compressed, and reshipped by rail to the port of export, it was interstate commerce from the beginning and properly subject to the combination of interstate rates from point of origin to concentration point, and thence to destination. McFadden v. A. G. S. R. Co. (C. C. A. 3) 241 F. 562; Ingalls v. Maine Cent. R. Co. (D. C.) 24 F.(2d) 113; Baltimore & O. S. W. R. Co. v. Settle, 260 U. S. 166, 43 S. Ct. 28, 67 L. Ed. 189.

While the decree of the lower court, which was in favor of the defendant, recites that it is "of opinion that the plaintiffs have neither in fact nor in law made out a case against the defendant," it is manifest that the facts were not in dispute, and that there was no occasion for the exercise of administrative discretion by the Interstate Commerce Commission, but that the real controversy between the parties was purely one of the construction of the published tariff; that is, to determine the meaning of words in the tariff used in their ordinary sense and to apply that meaning to the undisputed facts. The matter of construing such a printed railroad tariff does not differ in character from the construction of any other document which is in dispute. It presents a question of law, and as it concerns an interstate tariff it is one of Federal law. In this respect the court is not bound by the construction placed upon the tariffs by the Commission. Great Northern R. Co. v. Merchants' Elevator Co., 259 U. S. 285, 290, 42 S. Ct. 477, 66 L. Ed. 943, 946; Texas & P. R. Co. v. Leatherwood, 250 U. S. 478, 480, 39 S. Ct. 517, 63 L. Ed. 1096, 1098.

Where there is no ambiguity in the language used, a rate may be unjust and yet be enforced as the established one, but in doubtful cases, in the construction of a tariff, as of a law, in order to arrive at the intent of its framers, a court is warranted in considering how the rates claimed would operate as a matter of justice. Davis v. Prairie Pipe Line Co. (C. C. A. 8) 298 F. 393, 397; Pillsbury Flour Mills Co. v. Great Northern Railroad Co. (C. C. A. 8) 25 F.(2d) 66, 68, 69.

Turning then to the construction of the tariff in controversy, which hinges upon the applicability of the Jones-Kelley rule, it is apparent from reading the rule that it is not applicable except to rates contained in the tariffs where specific reference is made to it.

The tariff containing the outbound rate makes no reference to it, but, on the contrary, states that for cotton to enjoy a transit privilege it must pay the inbound interstate factor or rate to Montgomery plus the outbound factor from Montgomery to the ports. That is, both tariffs containing both rates or factors must refer to the Jones-Kelley rule and specify that it is applicable in order for both rates to be used as proportional factors or part of a combination transit rate. As the cotton was shipped out under a tariff that made no reference to the Jones-Kelley rule, and did not contain the 18-cent increase, the rule is not applicable.

It was the intent of the Director General, in General Order No. 28, and of the Commerce Commission in Ex parte Order No. 74, to increase all cotton rates 18 cents. The combination rule was devised for one purpose only, and that was to provide that only one increase should be made in connection with combination rates. If the construction which supports the award herein sued on were sustained, the unjust result would be that the approved transit rate, which was fair and reasonable and which did not contain the 18¢ increase, would be reduced 18 cents. This notwithstanding that out of its revenue the carrier itself pays 15 cents per hundred for concentration and compression. Such a construction would do violence both to the letter and intent of the rule and produce wholly inequitable results.

We conclude that the tariffs on the shipments in controversy were not subject to the operation of the combination rule, and accordingly the judgment is affirmed.