## WHEELOCK et al. v. WALSH FIRE CLAY PRODUCTS CO.

### No. 9423.

Circuit Court of Appeals, Eighth Circuit.

July 22, 1932.

Rehearing Denied Sept. 12, 1932.

Bryce L. Hamilton, of Chicago, Ill. (Ralph T. Finley, of St. Louis, Mo., Silas H. Strawn, of Chicago, Ill., and Jones, Hocker, Sullivan & Gladney, of St. Louis, Mo., on the brief), for appellants. .

S. Mayner Wallace, of St. Louis, Mo., for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

GARDNER, Circuit Judge.

Appellee brought this action at law against appellants, receivers for the Chicago & Alton Railroad Company, to recover certain alleged overcharges on shipments of freight. The parties will be referred to as they appeared in the lower court.

From December, 1924, to July, 1927, plaintiff shipped certain cars of fire brick from Vandalia, Mo., over the lines of the Chicago & Alton Railroad Company, as initial carrier, to East St. Louis, Ill., where the shipments were turned over to connecting carriers which either completed the transportation themselves or in turn delivered the shipments to connecting carriers which completed the transportation. All the shipments were ultimately delivered to consignees in the southeastern part of the United States. The freight charges were paid by plaintiff, and were collected by the various delivering carriers, and not by the defendants.

There were no joint through commodity rates on fire brick effective from Vandalia, Mo., applicable to these shipments. In some instances the combination through rates were made up of two factors—the rate from Vandalia, Mo., to the Ohio river crossing, and the rate from there to destination. In other instances the combination through rates were made up of three rate factors—the rate from Vandalia, Mo., to the Ohio river crossing, the rate from the Ohio river crossing to Jacksonville, Fla., and from there to destination.

The Chicago & Alton Railroad Company's tariff applicable was Speiden's Tariff 66, which at item 345 provided that the rates on brick named in the tariff would be subject to the rules for constructing combination rates provided in Jones' Tariff No. 228, I. C. C. No. U. S. 1. The carriers, other than the Chicago & Alton Railroad Company, participating in the transportation of these shipments, either made no reference to the Jones Tariff, or specifically stated in their applicable tariffs that they were not subject to the Jones Tariff.

By General Order No. 28, issued May 25, 1918, to become effective June 25, 1918, the Director General of Railroads, the transportation companies of the country being then under federal control, directed a flat increase of 25 per cent. on many freight rates, and on brick an increase of 2 cents per hundredweight, or 40 cents per ton, which was later increased to 2½ cents per hundredweight, or 50 cents per ton. This increase as thus made soon demonstrated the necessity for some limitation and modification as to its application. The increase could easily be applied to a local rate or a one-factor through rate; but, where the rate was a combination of two or more factors, an increase applied to each of the rate factors in accordance with the provisions of General Order No. 28, resulted in the previous rate being increased to three or more times over the increase provided in the general order. To remedy this defect and resulting inequality, a formula was published in the Jones Tariff No. 228, I. C. C. No. U. S. 1, effective February 15, 1919, and which remained in effect during the entire period of the shipments involved in this action. This formula was to be applied when, in order to get a through rate, it was necessary to combine two or more separate rates which contained the increase provided in General Order No. 28. In brief, this formula provides that, where no published through rates are in effect from point of origin to destination, and two or more factors are used in arriving at the through rate for a continuous rail shipment thereof, such through rate will be determined by reducing each separately established rate factor by the amount shown in section 2 opposite the commodity, and then adding the reduced commodity rate factors together, and to this sum the amount shown in section 2 opposite the commodity. The pertinent provisions of the formula are as follows:

"Section No. 1.

\* \* \* \* \* \*

"Where no published through rates are in effect from point of origin to destination on a commodity specified in Section 2, and two or more commodity rate factors (see note) are used in arriving at the through rate for a continuous rail shipment thereof, such through rate will be arrived at in the following manner:

"1. Each separately established commodity rate factor will be reduced by the amount

shown in Section 2 opposite the name of the commodity.

  \*   \*   \*   \*   \*   \*

"2. The reduced commodity rate factors will then be added together.

"3. To the sum of the separately established commodity rate factors thus obtained, add the amount shown in Section 2 opposite the name of the commodity.

  \*   \*   \*   :   \*   \*

## "Section No. 2.

  \*   \*   \*   :   \*   \*

"Brick (except enameled or glazed); Clay; Shale; and Clay Products on which the rates are the same as or based on arbitraries higher than the rates on brick (except enameled or glazed), carloads ...... 2½c per 100 lbs."

In collecting the freight charges on the shipments in question, no deduction was made as provided in this Jones Tariff formula. Plaintiff claims that, consistent with the provisions of Speiden's Tariff 66, item 345, and the formula in Jones' Tariff No. 228, I. C. C. No. U. S. 1, each of the various rate factors entering into the particular combination of rates applicable should be reduced by the 50 cents shown in section 2 opposite brick, and then to the total of these 50 cents should be added; in other words, that the formula in the Jones Tariff should be applied because the tariff of the initial carrier showed it as applicable. Plaintiff first applied to the Interstate Commerce Commission for an order of reparation, alleging that it had been subjected to the payment of rates that were when enacted and are unjust, unreasonable, and inapplicable in violation of section 1 of the Interstate Commerce Act (49 USCA § 1). Defendants did not resist this application, and it was granted by the Commission on July 8, 1929. Defendants not having complied with the order, plaintiff filed in the lower court its petition seeking enforcement of the award of reparation contained in the order. The action was tried to the court without a jury, and the court granted the prayer of the petition, entering judgment for plaintiff for the amount of the reparation and for attorney fees in the sum of $500. From the judgment thus entered, defendants prosecute this appeal.

The correctness of the judgment of the lower court is here challenged on the grounds that (1) the freight charges as assessed and collected by the defendants and connecting carriers were in accordance with the published tariffs; (2) the order of the Interstate Commerce Commission is void because it is broader than and departs from the issues as stated in the complaint; (3) the defendants as initial carriers cannot be held liable for alleged overcharges assessed by the destination carriers; and (4) the taxing of attorney fees was arbitrary and unjust.

As we view the record, the controlling question is whether or not the formula contained in the so-called Jones Tariff was applicable to the shipments here in controversy. The intitial carrier's tariff was the only tariff making reference to the Jones Tariff. All the other tariffs were either silent as to the Jones Tariff, or specifically provided that they would not be subject to it. Item 345, Speiden's Tariff 66, provided: "Except as otherwise indicated, rates on: Brick \* \* \* are subject to Rules for Constructing Combination Rates as provided in Agent B. T. Jones' Freight Tariff No. 228, I. C. C. No. U. S. 1, supplements thereto or reissues thereof."

On the title page of Supplement 14 of Jones' Tariff, effective January 1, 1923, appears the following in prominent type: "Rules for Constructing Combination Rates on Commodities Enumerated in Tariff, as Amended between Points on Railroads Shown as Participating Carriers."

On the second page of the Jones Tariff, under the caption "Participating Carriers," appears the following: "All railroads shown, by appropriate powers of attorney or concurrences in tariffs referring to this issue, as parties to rates made subject to the rules embodied therein."

It is observed that defendants' tariff contained no holding out whatever with reference to Jones' Tariff No. 228, except that it would be bound thereby. The Jones Tariff contains a description of the participating carriers. Manifestly, all carriers were not participating carriers, and, unless the carriers were participating carriers, there is nothing to indicate that the combination rule would be applicable. Railroads not concurring either by powers of attorney or in tariffs were clearly not parties nor subject to the rules embodied in the Jones Tariff.

The construction to be placed upon these tariffs which have the force and effect of statutes is governed by the same rule applicable to any other document in dispute. Pillsbury Flour Mills Co. v. Great Northern Ry. Co. (C. C. A.) 25 F.(2d) 66; Updike

Grain Co. v. Chicago & N. W. Ry. Co. (C. C. A.) 35 F.(2d) 486; Chicago, I. & L. Ry. Co. v. International Milling Co. (C. C. A.) 43 F.(2d) 93; Great Northern Ry. Co. v. Merchants Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943; Texas & Pac. Ry. Co. v. Leatherwood, 250 U. S. 478, 39 S. Ct. 517, 63 L. Ed. 1096; Hohenberg v. Louisville & N. R. Co. (C. C. A.) 46 F.(2d) 952, 955; Chicago Great Western R. Co. v. Farmers' Shipping Ass'n (C. C. A. 10) 59 F.(2d) 657.

■■■ The shipments herein involved were interstate in character, and hence the carrier was required to collect and the shipper required to pay the rates named in the applicable tariffs filed with the Interstate Commerce Commission. None of the carriers, except the initial carrier, were subject to the Jones Tariff. So far as they are concerned, at least, their rates must be determined by the applicable tariffs filed with the Interstate Commerce Commission. The initial carrier did not have it within its power by making its own tariff subject to the formula provided in the Jones Tariff, to modify or amend the applicable tariffs of the connecting carriers, nor to force upon them rates named in tariffs to which they were not parties. But it is said that the initial carrier held out that the applicable rates were subject to the formula contained in the Jones Tariff. However, it did not make such holding out, unless the Jones Tariff was in fact applicable. If the defendants held out the provisions of the Jones Tariff, they were held out as an entirety; that is, there was no holding out of the rule fixing the rate, except in connection with the other portions of the tariff to which we have called attention. The plaintiff was chargeable with notice of the provisions of all applicable tariffs, and hence it knew, in contemplation of law, that only the tariff of the initial carrier made reference to the Jones Tariff. It knew that the connecting carriers were not parties thereto, and the Jones Tariff itself gave notice that it was applicable only where the railroads, by appropriate powers of attorney or by concurrence in tariffs referring to the Jones Tariff, were subject to the provisions of that tariff. It had notice of all the rules and provisions contained in the Jones Tariff.

This is not a case in which the Interstate Commerce Commission as an administrative body was called upon to exercise a discretion; but the question to be determined is the meaning of the words used in these tariffs as applied to the facts in this case. In

Hohenberg v. Louisville & N. R. Co., supra, the Circuit Court of Appeals of the Fifth Circuit, in considering the question here presented, said:

"Turning then to the construction of the tariff in controversy, which hinges upon the applicability of the Jones-Kelley rule, it is apparent from reading the rule that it is not applicable except to rates contained in the tariffs where specific reference is made to it.

"The tariff containing the outbound rate makes no reference to it, but, on the contrary, states that for cotton to enjoy a transit privilege it must pay the inbound interstate factor or rate to Montgomery plus the outbound factor from Montgomery to the ports. That is, both tariffs containing both rates or factors must refer to the Jones-Kelley rule and specify that it is applicable in order for both rates to be used as proportional factors or part of a combination transit rate. As the cotton was shipped out under a tariff that made no reference to the Jones-Kelley rule, and did not contain the 18-cent increase, the rule is not applicable."

We are in full accord with these views. As said by this court in Davis v. Prairie Pipe Line Co., 298 F. 393, 397, "* * * A court is warranted in considering how the rates claimed as applicable would operate as a matter of justice in getting at the railroad's intention with relation to the tariffs."

■■■ It would seem clear that the Jones combination rule was not intended to be applied, unless all factors of the combination were subject to that tariff. In the instant case, where only the initial factor was subject to the rule, the other participating carriers are entitled and required to charge and collect their tariff rates unaffected by the rule, and this would place the entire reduction upon the initial carrier because the other carriers did not participate in the infliction of any wrong and are not joint tort-feasors. The effect of the judgment here was to reduce, in instances where the rate was made of two factors, the $1.65 rate from Vandalia, Mo., to Evansville, Ind., as specified in Speiden's Tariff, to $1.15, and, in the event the rate is made up of three factors, this $1.65 rate is reduced to 65 cents. It would therefore result that the initial carrier in this case would collect and receive neither the rate named in the Speiden Tariff, nor that rate as modified by the Jones Tariff. In other words, it would collect a rate justified by no published tariff.

There is one claim for $16.64 on overcharge made December 3, 1924, in which it is conceded that the rule of the Jones Tariff was applicable because specifically mentioned in the tariffs of all the carriers concerned. As to this claim the plaintiff was entitled to recover.

As to the other claims involved, we conclude that the Jones Tariff is not applicable. In view of this conclusion, it is unnecessary to consider the other issues presented.

The judgment appealed from is therefore reversed, and the cause remanded for further proceedings consistent herewith.