HYGRADE FOOD PRODUCTS CORPORA-
TION v. CHICAGO, M., ST. P. & P. R.
CO. et al.

District Court, S. D. New York.
April 25, 1935.

Hornblower, Miller, Miller & Boston, of New York City (Edward M. Boyne, of New York City, of counsel), for plaintiff.

Cravath, De Gersdorff, Swaine & Wood, of New York City (Bruce Bromley and Littleton Groom, both of New York City, of counsel), for defendants Chicago, M., St. P. & P. R. Co. and New York, C. & St. L. R. Co.

Jacob Aronson, for defendant Indiana Harbor Belt R. Co.

RIPPEY, District Judge.

Complaint was made by the Allied Packers, Inc., to the Interstate Commerce Commission against various railroad companies, including the defendants in this action, alleging overcharges on shipments of hogs in single-deck and double-deck carloads from points in South Dakota and elsewhere via Chicago to Buffalo, N. Y. between March 15, 1924, and November 15, 1925, on which the shipper was compelled to pay full combination of intermediate rates plus double flat rate increase wherein the shipper claimed that the charge should have been a combination of intermediate rates plus a single flat rate of 8½ cents increase only computed in accordance with the Jones Tariff Rule (B. T. Jones Tariff 228, I. C. C. U. S. 1) as construed in Sligo Iron Store Co. v. W. M. R. Co., 62 I. C. C. 643, and approved on rehearing in 73 I. C. C. 551. After full hearing, the Interstate Commerce Commission held that the shipper was entitled to reparation (Allied Packers, Inc., et al. v. B. & O. R. Co. et al., 153 I. C. C. 714), and an order was made on January 12, 1931, directing payment on or before February 27, 1931, of the various overcharges with interest from the several dates of shipment at the rate of 6 per cent. per annum. The carriers failed to make reparation as ordered. The plaintiff here acquired by assignment all claims of the Allied Packers, Inc., and there-

upon began five actions against the various railroad companies involved under section 16 (2) of the Interstate Commerce Act (49 USCA § 16 (2) to recover the amounts of overcharge so awarded. These actions were regularly reached on the law calendar of this court for trial and moved by plaintiff on November 19, 1934, whereupon all parties waived trial by jury and submitted the cases to the court upon the pleadings, the order of the Interstate Commerce Commission, and an agreed statement of facts to be submitted to the court with briefs on February 1, 1935. The statement of facts and briefs have been furnished. It was also agreed that this case should serve as a test case, and that decision should be made and judgment docketed in the other four cases in accordance with the decision in this case. The court has considered freight tariffs and proceedings before and rulings by the Interstate Commerce Commission deemed relevant.

█ This particular action is brought to recover the overcharge for shipments over defendants' lines of one single-deck carload of hogs from Mitchell, S. D., on December 4, 1924, to Buffalo, N. Y., and of four double-deck carloads of hogs from Platte, S. D., to Buffalo during the months of April and May, 1925. The initial carrier between Mitchell and Platte to Chicago was the Chicago, Milwaukee & St. Paul Railroad Company (known and hereinafter referred to as the St. Paul), which later became, in proceedings duly had, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, one of the defendants herein. The intermediate carrier was the Indiana Harbor Belt Railroad Company. This company was the switching carrier at Chicago, carrying the shipments between the termini of the initial and final carriers. It did not participate in fixing the combination rates for the shipments. Its charges were absorbed by the two main carrying roads pursuant to the terms of Lowrey's Division Sheet No. X–12–E, effective July 1, 1922, and supplements thereto. Nevertheless, it received compensation from the charges made by the two main carriers and paid by plaintiff's assignor, and is a proper and necessary party to this proceeding. The final carrier from Chicago to Buffalo was the defendant, the New York, Chicago & St. Louis Railroad Company, hereinafter referred to as the Nickel Plate.

There were no joint through rates in effect when the shipments were made. The through rates were combinations of the rates on the St. Paul from Mitchell and Platte to Chicago of 49.5 and 51 cents per CWA, respectively, under its supplement No. 5 to its tariff G. F. D. 12970–D (I. C. C. No. B–4831), effective November 10, 1923, under which the combination rule laid down in B. T. Jones Tariff No. 228 I. C. C. U. S. 1 was stated to be inapplicable to shipments of hogs to Chicago and on the Nickel Plate from Chicago to Buffalo of 44.5 cents per CWA under its tariff G. F. D. No. 619–E (I. C. C. No. 4552), under which the Jones combination rule was specifically stated to be applicable. The rates therefore charged and collected on the through shipments from Mitchell and Platte to Buffalo were 94 and 95.5 cents per CWA, whereas plaintiff claims the legal rates would reduce the total charge by the amount claimed through application of the Jones combination rule. It is the claim of defendants that the Jones combination rule of computing through rates is not applicable because the initial and intermediate carriers did not concur in, but rather expressly excluded, the application of that rule. This claim the defendants cannot successfully maintain.

█ On May 25, 1918, the Director General of Railroads issued General Order No. 28, effective June 25, 1918, generally increasing freight rates on live stock and other commodities throughout the United States. It was found that the flat rate increases allowed, when making up combination through rates, resulted in an amount in excess of the prescribed increase provided by General Order 28, and that it worked out as intended only on single line hauls. In the case of a combination rate over two lines, the flat rate increase would be added to the basic rate of each line, thus bringing about the addition to the basic combination rate of double the flat rate increase intended. To correct this situation the Director General published and put into effect rules for constructing combination rates on commodities (including live stock) enumerated in tariff as amended, for a continuous rail shipment between points on railroads shown as participating carriers, made up by B. T. Jones, agent of the Central Freight Association Tariff Bureau (Tariff No. 228, I. C. C. U. S. 1). This rule provided that the addition of the flat increase to the combined basic rates of the participating carriers could be made but once. From time to time, supplements to this tariff were made and supplement 14 was in effect from January 1, 1923, and during the period of the shipments in question.

Up to November 10, 1923, the St. Paul Railroad Company operated under this rule. It is claimed here that it ceased to be bound by this rule after that date as to shipments going anywhere in the United States because of the order of the Interstate Commerce Commission entered on February 13, 1923, in docket No. 12268 (Board of Railroad Commissioners of State of South Dakota v. Chicago & N. W. R. Co. et al., 77 I. C. C. 451), and that it had the right to refuse to concur in the application of the rule on all shipments going to points east of Chicago as well as to points west of Chicago. The decision of the Interstate Commerce Commission clearly indicates that it was not intended to and did not apply in the way defendants claim. The Commission has not only so held in this case (Allied Packers, Inc., v. Baltimore & O. R. Co., 153 I. C. C. 714), but in every case where the point has been raised. In docket No. 12268, it was held, on the only issue presented, that the rates in existence at the time of the filing of the complaint for shipment of live stock from South Dakota points under the then existing tariffs to her markets and intermediate points in the states of Minnesota, Wisconsin, Illinois, Iowa, Missouri, and Nebraska were unreasonable and unduly prejudicial to South Dakota shippers, and reasonable and nonprejudicial maximum rates and minimum weights were prescribed. The complaint had reference only to South Dakota markets in the specific states mentioned and especially to direct shipments on a single line to her principal markets in Sioux City, Omaha, Chicago, and St. Paul. The case had no reference to or bearing upon shipments to points east of Chicago, either over a single line or over two or more connecting lines, or to combination rates by two or more carriers. The term "elsewhere" used in the stipulation of facts numbered 16 and, if used in the decision (docket 12268), does not and cannot, under the facts in that case, be construed to refer to points east of Chicago. It refers only to points other than Chicago in the states of Minnesota, Illinois, Iowa, Missouri, and Nebraska. The application of the Jones combination rule in the case at bar is in harmony with the equalization of rates by docket 12268 from South Dakota points to her markets in Chicago and in points east of Chicago as affecting shipments from the states referred to in that case. Otherwise, South Dakota would still remain on her "high rate plateau" referred to in Board of Railroad Commissioners v. Chicago & N. W. R. Co., 77 I. C. C.

451, 452, the decision in docket 12268 would be meaningless, and a result would obtain opposite to that intended by the Commission. Further light is shed on the intent of the Commission and the purpose of the decision in the case of Hygrade Food Products Corp. v. Baltimore & O. R. Co. et al., 190 I. C. C. 489. There it applied the combination rule to shipments from Kansas, Missouri, and Oklahoma (Missouri being one of the states referred to in docket 12268), to points east of Chicago. This decision has been concurred in by the carriers and held applicable to shipments from other states. Add to the above the fact that the St. Paul voluntarily construed the decision in docket 12268 as not affecting the operation of the combination rule for a period of nine months after the decision went into effect, and that the St. Paul is specifically mentioned on page 2 of supplement 14 of the Jones Tariff as one of the carriers affected by the combination rule, defendants should not be further heard that the rule does not apply.

■ Defendants further contend that, notwithstanding what has been said above, they are still not bound by the combination rule as a matter of law because the initial and intermediate carriers did not concur with the final carrier in its application. Such a claim has been overruled by the Interstate Commerce Commission in many cases and consistently overruled down to date over a period of more than thirteen years. The purpose and effect of the rule, with specific reference to the intent of the Director General of Railroads in providing for a flat increase of rates and the effect of General Order 28 and supplements, was first considered in 1921 in Sligo Iron Store Co. v. W. M. R. Co. et al., 62 I. C. C. 643 and, on rehearing, in 1922, 73 I. C. C. 551, where it was held that equalization of rates between shippers over connecting lines required the addition of the flat rate increase but once. This decision was followed in Standard Oil Co. v. Director General, 74 I. C. C. 188, and explained in Standard Oil Co. v. Midland V. R. Co., 81 I. C. C. 193, where the identical point raised by defendants here was presented and it was said that: "Where one of the tariffs used in making the combination rates on through shipments contains a rule that such rates will be subject to the increase but once, there is a holding out to the shipper of the rates so constructed, or, in other words, an undertaking by the carrier publishing that rule to protect the resulting

aggregate rate." The Commission has since followed the decision in the Sligo Case without a break, and applied the rule in other cases of shipments originating west of Chicago to points east over two or more connecting lines. Some of these cases follow: Lehigh Portland Cement Co. v. C. & O. R. Co., 152 I. C. C. 351; Lehigh, etc., Co. v. C. & O. R. Co., 157 I. C. C. 437; Lassiter & Co. v. Alabama Great So. R. Co., 157 I. C. C. 512; Atlantic Lumber Co v. L. & N. R. Co., 157 I. C. C. 236; Missouri P. Cement Co. v. St. L. S. F. R. Co., 163 I. C. C. 767; Washington Building Lime Co. v. B. & O. R. Co., 167 I. C. C. 245; Farley & Loetscher Mfg. Co. v. C., B. & Q. R. Co., 168 I. C. C. 750; Republic Creosoting Co. v. M. I. R. Co., 173 I. C. C. 5; Schimmel v. B. & O. R. Co., 171 I. C. C. 791; Medusa P. C. Co. v. C. B. & Q. R. Co., 178 I. C. C. 93; Brewster Loud Lumber Co. v. Duluth, S. S. & A. R. Co., 178 I. C. C. 492; Galveston Cotton Exch. v. A. & V. R. Co., 179 I. C. C. 386; Vogt & Sons v. C. B. & Q. R. Co., 181 I. C. C. 152; Crane Enamelware Co. v. B. & O. R. Co., 178 I. C. C. 386; Thames & Co. v. Atl. C. L. R. Co., 185 I. C. C 157; North Packing & Prov. Co. v. C. R. I. & P. R. Co., 185 I. C. C. 478; Creamery Package Mfg. Co. v. B. & M. R. Co., 192 I. C. C. 185; Hygrade Food Prod. Corp. v. B. & O. R. Co., 190 I. C. C. 489; Wenger v. A., T. & S. F. R. Co., 195 I. C. C. 345; Medusa P. C. Co. v. Ann Arbor R. Co., 195 I. C. C. 681; Ashby Veneer & L. Co. v. D. & R. G. W. R. Co., 200 I. C. C. 472.

■ While not conclusive, great weight should be given by courts to the construction of the Jones combination rule placed upon it by the Commission charged with the administration of tariffs of freight rates. Fawcus Mach. Co. v. U. S., 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. 397; Universal Battery Co. v. U. S., 281 U. S. 580, 50 S. Ct. 422, 74 L. Ed. 1051.

The enforcement of the combination rule has been concurred in by all carriers, apparently, except in Hohenberg v. L. & N. R. Co. (C. C. A.) 46 F.(2d) 952, Wheelock et al. v. Walsh Fire Clay Products Co. (C. C. A.) 60 F.(2d) 415, and Peerless Woolen Mills Inc. v. A. T. & N. R. R. Co. et al., Law No. 1616, unreported. The decision in the Peerless Case was by consent. The decisions in the Hohenberg and Wheelock Cases were that all carriers affected by the combination rule must concur, but the facts were different than in the case at bar, particularly in the fact that the Interstate Commerce Commission held that the rates assailed were reasonable and those cases cannot be deemed authoritative here. A contrary decision was made in Empire Refining Co. v. Davis (D. C.) 6 F.(2d) 305, and the Interstate Commerce Commission has held that the Hohenberg decision is inapplicable upon facts similar to those in the case at bar. Galveston Cotton Exch. v. Alabama & V. R. Co., 179 I. C. C. 386; Hygrade Food Prod. Corp. v. B. & O. R. Co. et al., 190 I. C. C. 489. In the Hohenberg and Wheelock Cases it is recognized that an unjust result might vary the decision, and that the decision would not apply where the Commission held, as a fact, that the assailed rates were unreasonable.

■ By statute, the findings and order of the Commission is prima facie evidence of the facts found therein. 49 USCA § 16 subd. 2. In the absence of evidence to the contrary, the facts found are presumed to be sustained by the evidence before the Commission. Meeker v. Lehigh V. R. Co., 236 U. S. 412, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691; Pennsylvania R. Co. v. Weber, 257 U. S. 85, 42 S. Ct. 18, 66 L. Ed. 141. One of the facts found by the Commission was, necessarily, that the assailed rate charged was unreasonable and the Commission concluded that failure to apply the combination rule in the case at bar would result in unjust discrimination against the plaintiff. Meeker Case, supra. None of the evidence before the Commission was introduced on the trial here. This court cannot determine that the decision and order of the Commission was wrong as a matter of law. The order is conclusive on this court. Spiller v. Atchison, Topeka & Santa Fe R. Co., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810; Meeker Case, supra. The necessary conclusion is that the rates charged were unreasonable, discriminatory, and unjust.

In addition to the above facts, I therefore find:

(1) That the rates charged and collected from plaintiff's assignor by defendants were in excess of the lawful rates, so that the plaintiff is entitled to reparation claimed.

(2) The findings, conclusions, and order of the Interstate Commerce Commission awarding plaintiff's assignor reparation were valid, and the construction and effect given to the combination rule under the facts herein were legal and binding.

(3) Notwithstanding the fact that all of the defendant carriers did not concur in the

application of the combination rule (Supp. No. 14 to B. T. Jones Tariff No. 228 I. C. C. U. S. 1), the rule was applicable to the shipments in question.

Judgment is directed for plaintiff and against the defendants for $158.21, with interest at the rate of 6 per cent. per annum, with taxable costs and disbursements, together with the sum of $250, which sum is hereby fixed and allowed to plaintiff as its reasonable attorneys' fee herein for proceedings in this case to be taxed as part of the costs to plaintiff herein.