### HYGRADE FOOD PRODUCTS CORPORATION v. CHICAGO, M., ST. P. & P. R. CO. et al.

### No. 423.

Circuit Court of Appeals, Second Circuit.

July 30, 1936.

Cravath, deGersdorff, Swaine & Wood and Jacob Aronson, all of New York City (William D. Whitney and Littleton Groom, both of New York City, of counsel), for appellants.

Miller, Owen, Otis & Bailly, of New York City (Harold J. Gallagher and Edward M. Boyne, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This appeal involves the determination of the legal freight rates applicable to shipments of hogs from points in South Dakota to Buffalo, N. Y. On December 4, 1924, the plaintiff's assignor, Allied Packers, Inc., shipped a single deck carload of hogs from Mitchell, S. D. The St. Paul road carried it to Chicago, where it was switched by the Indiana Harbor Belt Railroad to the tracks of the Nickel Plate, which carried it on to Buffalo. There were also four shipments from Platte, S. D. to Buffalo during April and May, 1925, but, since these present the same question of law as does the shipment from Mitchell, attention may be confined to the latter. No joint through freight rate was in effect between Mitchell and Buffalo. The freight collected was the sum of the rates charged respectively by the St. Paul and the Nickel Plate, namely, 49.5 cents per cwt. from Mitchell to Chicago, and 44.5 cents per cwt. from Chicago to Buffalo, a total of 94 cents per cwt. The switching charge of the Indiana Harbor road was absorbed by the line-haul carriers; therefore the switching service may be disregarded in discussing the problem presented by the appeal. Wisconsin Lime & Cement Co. v. Atchison, T. & S. F. Ry. Co., 148 I.C.C. 599, 601; Breece Lumber Co. v. Atchison, T. & S. F. Ry. Co., 190 I. C. C. 125, 127. Claiming that it had been overcharged, Allied Packers, Inc., brought a reparation proceeding before the Interstate Commerce Commission and obtained an award against the carriers. Allied Packers, Inc., v. Baltimore & O. R. R. Co., 153 I. C. C. 714. By assignment the claim of Allied Packers, Inc., was acquired by the plaintiff. As the railroads refused to comply with the reparation order, this action was commenced and resulted in the judgment from which the defendants have appealed.

The District Court, following the decision of the Commission in the reparation proceeding, held that the shipment should have been carried under a combination rate determined in accordance with the combination rule frequently referred to as the Kelly Rule or the Jones Rule. This was devised to meet difficulties resulting from a flat increase in rates throughout the country made by the Director General of Railroads in 1918, when the roads were being operated under federal control. The flat increase was fair enough when applied to a local rate or a one-factor through rate between the points of origin and destination, but resulted in duplication of the increase when the through rate was a combination of "factors" (intermediate rates) to each of which the increase was applied. To remedy this, a formula was devised for constructing combination rates by which the increase granted was less than the aggregate of the increases on the several constituent rates or factors. It came to be

known as the "Jones Rules for Constructing Combination Rates," and the rules in effect at the time of the shipments now in question were published as Supplement No. 14 to Freight Tariff No. 228, effective January 1, 1923. If these rules were applicable, the plaintiff's assignor was charged in excess of the legal rate; otherwise it was not.

The St. Paul tariff, which became effective November 10, 1923, expressly stated that the Jones Rules for constructing a combination rate were not applicable to carload shipments of hogs from Mitchell to Chicago. Its previous tariff had adopted them, but, when the rates of that tariff were reduced from 57 cents per cwt. to 49.5 cents, the new tariff excluded them. The Nickel Plate tariff effective during the shipments in question stated that the Jones Rules were applicable to carload shipments of hogs from Chicago to Buffalo. The question presented is whether Supplement No. 14 to Freight Tariff No. 228 is to be applied to a through shipment when one of two participating carriers has adopted it and the other has rejected it.

As a matter of original construction, we should find no difficulty in saying that such a case was excluded by the very terms of Supplement No. 14. This states that it contains "Rules for Constructing Combination Rates on commodities * * * for a continuous rail shipment between points on Railroads shown as Participating Carriers as named on Page 2 of Tariff as amended." On page 2 participating carriers are defined as "all railroads shown, by appropriate powers of attorney or concurrences in tariffs referring to this issue, as parties to rates made subject to the rules embodied herein." On page 3, under the caption "Application of Tariff as amended," appears the statement: "Except as otherwise indicated herein and where specific reference hereto is made in tariffs, rules provided herein apply in connection with rates made subject to the rules and embodied herein." The foregoing quotations clearly indicate that the rules for constructing combination rates were intended to apply only when the participating carriers had expressed their assent thereto by "concurrences in tariffs," or by powers of attorney. There is no suggestion that concurrence by one of the participants would make the rules operative; all must concur. Nor would this leave a shipper at the mercy of the railroads, if one of the

carriers refused concurrence. If the sum of the individual rates of the several carriers made an unreasonable charge for the carriage, the Commission had ample power, either upon complaint or upon its own initiative, to establish through rates, joint classifications, and joint rates, and to provide for division of the charges between the carriers. 49 U.S.C.A. § 15(3).

But it is urged that the Commission decided otherwise in Sligo Iron Store Co. v. Western Maryland Ry. Co., 62 I.C.C. 643, affirmed (Oct. 10, 1922) 73 I.C.C. 551, and that the courts are bound to follow the Commission's interpretation of tariffs. We do not understand that the Commission has ever interpreted Supplement No. 14, or earlier publications of the so-called Jones Rules, as intended to apply where only one of the participating carriers had expressed concurrence therein. See Proportional Rates on Livestock, 109 I.C.C. 417, 425. What was decided in the Sligo Case was that the publication in the tariff of one of the participating carriers of its concurrence in the Jones Rules "was a holding out of a manner of making combination rates on through shipments, which that carrier must protect, or, in other words, that the local rate of the Santa Fe [the concurring carrier] when used as a factor of a combination rate, was modified by the note published in connection with it to the extent necessary to protect a through rate constructed as provided by the note." Sligo Iron Store Co. v. Western Maryland Ry. Co., 73 I.C.C. 551, 552. The Sligo Case has been frequently reaffirmed by the Commission, as it was in the reparation proceeding which is the foundation of the present action, though not without recurring dissents. But the Sligo decision is rather an announcement of a principle of the law of estoppel than an interpretation of a railroad tariff, and with the rule of law it announces we must respectfully disagree. The tariff of the concurring railroad (the Santa Fé in that case and the Nickel Plate in this) contained no holding out with reference to the Jones Rules, except that it would be bound by them when applicable. Since by their terms they were not applicable unless the other participating railroads also concurred in them, there is no basis for estoppel. Shippers are required to know the contents of published tariffs, so that there is no room to estop the carrier from charging the lawful rate shown in its properly filed tariff. Texas

& P. R. Co. v. Leatherwood, 250 U.S. 478, 481, 39 S.Ct. 517, 63 L.Ed. 1096. The construction of Supplement No. 14 to Freight Tariff No. 228 involves words used in their ordinary meaning and requires no technical or expert knowledge possessed by the Interstate Commerce Commission. Under such circumstances, we understand that the courts are at liberty to decide independently of the Commission. Two Circuit Courts of Appeal have rejected the Sligo principle. Hohenberg v. Louisville & N. R. R. Co., 46 F.(2d) 952 (C.C.A.5), certiorari denied 284 U.S. 617, 52 S.Ct. 6, 76 L.Ed. 527; Wheelock v. Walsh Fire Clay Products Co., 60 F.(2d) 415 (C.C.A.8). See, also, Brown & Sons Lumber Co. v. Louisville & N. R. R. Co., 82 F.(2d) 94 (C.C.A.6). For the reasons above given we have reached the same conclusion. Accordingly the judgment must be reversed and the complaint dismissed.

It is so ordered.

L. HAND, Circuit Judge (dissenting).

The first shipment in question was in December, 1924; the St. Paul Road repudiated the Jones Rule on November 10, 1923; the "Sligo Decision" was finally affirmed on October 10, 1922. Therefore on this record the Nickel Plate Road accepted shipments thirteen months after it knew that the St. Paul would not share the deduction, and that the Commission had ruled that it was bound to bear the whole of it. I do not think the "Sligo Decision" right, but it does not seem to me so wrong that, once made, carriers could insist upon ignoring it; shippers might assume if a carrier did nothing that it assented to such a ruling. We know from the Interstate Commerce Commission Reports (Restrictions in the Combination Rule on Livestock, 93 I.C.C. 458) that the Nickel Plate Road filed a tariff, scheduled to become effective August 1, 1924, which would no longer have "held out" to shippers that it would stand the whole deduction, but the Commission, in an opinion rendered on November 24th, refused to allow it to go into effect. Nine months' delay was not long enough finally to commit it, and in any case it had done all it could after August 1, 1924, so that if I could look at those facts I should vote to reverse. But they are not in the record and nobody suggests that we may notice them. For this reason I think that the judgment should be affirmed.