Cowen, Chief Judge,
delivered the opinion of the court:
This action to recover freight charges involves 23 shipments of Army tractor tanks with guns, which moved during the months of May and June 1958 over the lines of plaintiffs from Nebo, California, to Renton, Washington. After the shipments had been completed, the carriers billed defendant and were then paid the charges claimed. They were based upon a Class or Column 35 rate named in Section 2, page 173 of North Pacific Coast Freight Bureau Tariff No. 1016, plus various rate increases.
*454 After an audit made pursuant to 49 U.S.C. § 66, defendant determined that it had been overcharged in the amount of $10,967.55 and deducted that sum from amounts admittedly due plaintiff Great Northern Railway Company on bills for other services. The deduction was made in reliance on a Glass 85 rate in Pacific South-Coast Freight Bureau Tariff No. 234-C, plus various rate increases. Thereafter, plaintiffs brought this suit to recover the amount deducted. Defendant asserts that it is entitled to retain the deduction and, in addition, it has a counterclaim for $210.91, computed on the same basis it used in making the deduction.
At the time the Army tanks were transported by plaintiffs, ‘there was in effect Section 22 Quotation 64-A, tendered to defendant under Section 22 of the Interstate Commerce Act ;and authorizing rates lower than those stated in published tariffs on file with the Interstate Commerce Commission. If Section 22 Quotation No. 64-A had not been available, defendant would have been charged freight rates based on a Class A rating, since Army tractor, tanks carried that rating in the Western Classification. A Class A rating is lower than a Class 1 rating. By virtue of the quotation, defendant claims that it was entitled to apply a Class or Column 35 .rating. Class 35 means 35 percent of the first class rating .and is lower than a Class A rating.
To the extent that it is pertinent here, Quotation 64-A provided as follows:
Item No. 2 Rates to be Applied
Subject to compliance with all the terms and conditions of this quotation, each shipment of the kind described in Item No. 1 [Army tractor tanks with' guns] shall-be subject and entitled'to all-rail carload rates as follows. . .' . class or column 35. (see Note 2) published in tariffs (see Exceptions) lawfully, on file with the Interstate Commerce Commission.
Note 2. Where class or column. 35 is not published apply 35 percent of first class. * * *
In computing the freight charges which it says were applicable, defendant points to the above, quoted language and contends that since a Class 1 rating covering Army tractor tanks with guns was published in Pacific South-Coast *455 Freight Bureau Tariff No. 234-C, it was entitled to 35 percent of the rate fixed for that first class rating. However, plaintiffs maintain that prior to the time the shipments were made, the Class 35 rating in the tariff relied upon by defendant had been cancelled and was no longer in effect. Therefore, plaintiffs say that to determine the rate authorized by Quotation 64-A, we must look to the terms of an available tariff in which a Class or Column 35 rating was published and was then in effect. According to plaintiffs, the tariff in which such rating was published and in effect was the tariff upon which they rely.
Effective as of September 1, 1956, and before defendant shipped the tractor tanks, Supplement No. 52 to Pacific South-Coast Freight Bureau Tariff No. 234-C was published. It was in effect when the shipments were made and provided as follows:
All class rates in this Tariff are hereby cancelled except:
(b) Class rates are continued in effect to apply on traffic subject to ratings in the Western Classification as follows: Classes 1 through A only. Articles subject to ratings in Western Classification lower than Class A (i.e., Classes B, C, D and E) are hereby made subject to 5th class rates (exceptions to Western Classification. The provision of this paragraph is not an exception to the Western Classification under paragraph (a) hereof). For rates to apply in lieu of those hereby cancelled, see Mountain-Pacific Intraterritorial Class Tariff No. 1016, Agent J. P. Haynes’ ICC No. 1590.
The facts are not disputed and it is clear that the issue here involves a construction of published tariffs and presents purely a question of law. Hohenberg et al. v. Louisville & N. R. Co., 46 F. 2d 952, cert. denied, 284 U.S. 617 (1931).
In following established rules for the construction of tariffs, we must examine and give effect to every pertinent word, clause, and sentence of the quotation and tariffs before us. It is to be noted first that Supplement 52 to Pacific South-Coast Freight Bureau Tariff No. 234-C cancelled all class rates in that tariff, except Classes 1 through A. Since a Class or Column 35 rate is lower than a rate charged on an article rate in Classes 1 through A, it follows that any Class *456 or Column 35 rate theretofore provided in that tariff was also cancelled. Defendant seems to admit this.
We think the key to the question for decision is found in Note 2 of Quotation 64-A. Although defendant correctly states that the Class 1 rating for tractor tanks remained in effect when Supplement 52 to Tariff No. 234 — C was issued, the defendant must, if it is to prevail, show that a Class or Column 35 rating for tractor tanks was not published at the time pertinent to this suit. For, unless such a rate was not published in an available tariff, Note 2 precludes defendant from applying 35 percent of the first class rate as it has done.
The answer to whether a Class or Column 35 rate was published is found in the provisions of Quotation 64-A itself, which in Item No. 7, entitled “Definition of Terms”, states:
Where reference is made to “Item”, “Quotation”, “tariff” or “Classification”, such reference includes supplements or amendments thereto or successive issues thereof. The term “tariff” as used herein means tariffs on file with the Interstate Commerce Commission or State regulatory authorities. Where reference is made to “rate”, it means a rate in effect by tariff or pursuant to any other applicable Quotation. The term “Quotation” as used herein means a quotation under Section 22 of the Interstate Commerce Act, as amended.
To determine whether a tariff providing for a Class or Column 35 rate was on file with the Interstate Commerce Commission and in effect as stated in the quotation, we next look to Supplement 52 of Tariff No. 234-C which directs us to Mountain-Pacific Intraterritorial Class Tariff No. 1016 for the rates to be applied in lieu of those cancelled by the Supplement. It is undisputed that this tariff was on file with the Interstate Commerce Commission, was in effect when plaintiffs transported the tractor tanks, and provided a Class or Column 35 rate for tractor tanks in Section 2 at page 173 thereof. This is the rate which the plaintiffs charged, and we. think the conclusion is inescapable that it was the applicable rate.
Judgment is entered for plaintiffs in the sum of $10,545.73 and defendant’s counterclaim is dismissed.
*457 FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Franklin M. Stone, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, Great Northern Railway Company, is a corporation organized and existing under the laws of the State of Minnesota. It is a common carrier 'by railroad engaged in interstate commerce over its own lines and jointly with other lines. Plaintiff, Pacific Coast Railroad Company, is a corporation organized and existing under the laws of the State of Washington. It is a common carrier by railroad engaged in interstate commerce over its own lines and jointly with other lines.
2. At various times during the months of May and June of the year 1958, plaintiffs, over their own lines and jointly with other carriers, transported 23 shipments of Army tractor tanks with guns from Nebo, California to Renton, Washington, under 23 Government bills of lading. That transportation service was performed at the request of defendant and said shipments were delivered to officers of defendant authorized to receive them.
3. During the months of May and June 1958, EC-WTA Section 22 Quotation No. 64-A was in effect and provided in pertinent part:
For and on behalf of carriers by railroad, parties to Uniform Freight Classification and/or Consolidated Freight Classification (see Item No. 3), we are authorized to and do hereby quote and offer to the United States Government, pursuant to Section 22 of the Interstate Commerce Act, as amended, the transportation services hereinafter described for the charges and under and subject to the terms and conditions herein stated.
Item No. 1. Traffic Covered
The traffic covered is:
Army Tractor Tanks, with or without guns mounted thereon, without equipment, or with necessary equipment properly secured inside the tanks or boxed and shipped with the tanks, loose or in packages;.
Tractors, artillery towing, crawler type, with or without guns mounted thereon, without equipment or *458 with necessary equipment properly secured inside vehicle, loose or in packages; and
Tractor Tracked Utility Vehicles, with or without guns mounted thereon, without equipment or with necessary equipment secured inside vehicle, loose or in packages, or secured to the same car in which the vehicle is transported, loose or in packages;
in carloads, minimum weight 60,000 pounds per carload, property of the Department of the Army, Department of Air Force, Department of the Navy or United States Marine Corps, hereinafter referred to as “the Government”, on Government bills of lading, or on commercial 'bills of lading endorsed to show that such bills of lading will be exchanged for Government 'bills of lading at destination, moving all-rail, from and to points in the Continental United States.
Item No. 2. Rates to be Applied
Subject to compliance with all the terms and_ conditions of this Quotation, each shipment of the kind described in Item No. 1 shall 'be subject and entitled to all-rail carload rates as follows:
(a) Intraterritorially within and interterritorially between New England, Truck Line, Central, Illinois, Southern, Western Trunk Line and Southwestern territories, Class 85, published in tariffs which are governed by the Uniform Freight Classification (see Item No. 3).
(b) On trans-continental traffic, also intraterritorial traffic within or interterritorial traffic between Mountain-Pacific, North Pacific Coast and Pacific Southcoast territories, Class or Column 35 (see Note 2) published in tariffs (see Exception) lawfully on file with the Interstate Commerce Commission.
Exception: Eates so provided do not apply in connection with rates named in Pacific Southeast Freight Bureau Tariff No. 255-F, Agent J. P. Haynes’ I.C.C. No. 1567.
Note 2. Where Class or Column 35 is not published, apply 35 percent of first class, fractions less than 14 cent — drop; % cent or over — convert to the next higher full cent.
* * * * *
4. Upon the completion of the transportation services involved herein, plaintiff, Pacific Coast Eailroad Company, as the final and delivering carrier, billed defendant at the rate *459 of $2.40 per hundred weight for said shipments based upon a Class or Column 35 rate named in Section 2, page 173 of North Pacific Coast Freight Bureau Tariff No. 1016, plus various rate increases.
5. On September 1, 1961, defendant deducted the total amount of $10,967.55 from amounts admittedly due plaintiff, Great Northern Railway Company, on its bills for other services, doing so on the theory that plaintiff, Pacific Coast Railroad Company, had overcharged defendant by that amount on the 23 shipments of Army tractor tanks involved herein.
6. In making said deduction, defendant relied upon a Class 35 rate made in Pacific South-Coast Freight Bureau Tariff No. 234-C, plus various rate increases. The audit action of defendant was authorized by the provisions of 49 U.S.C. 66.[1]
■7. The petition in this action was filed by plaintiffs on July 23, 1962, to recover said total sum of $10,967.55 deducted by defendant from amounts admittedly due plaintiff, Great Northern Railway Company (finding 5).
<8. Effective September 1, 1956, Supplement No. 52 to Pacific South-Coast Freight Bureau Tariff No. 234-C was published which purported to cancel certain of the rates in the said tariff 234-C as follows:
All class rates in this Tariff are hereby cancelled except:
(a) Class rates are continued in effect to apply on traffic subject to Exceptions to Western Classification as provided in tariff and as amended, and in current Exception Sheet.
(b) Class rates are continued in effect to apply on traffic subject to ratings in the Western Classification as follows:
Classes 1 through A only. Articles subject to ratings in Western Classification lower than Class A (i.e., *460 Classes B, C, D and E) are-hereby made subject to 5th. class rates (exceptions to Western Classification. The provision of this paragraph is not an exception to the Western Classification under paragraph (a) hereof). For rates to apply in lieu of those hereby cancelled, see Mountain-Pacific Intraterritorial Class Tariff No. 1016, Agent J. P. Haynes’ ICC No. 1590.
9. At the time the shipments here involved moved, the Western Classification provided a Class A rating for Army tractor Tanks with guns, named in Item 34460 of Consolidated Freight Classification 20, Item 72760 of Consolidated Freight Classification No. 21 and Item 72760 of Uniform Freight Classification 4.
(10. (a) Plaintiffs’ original bills, as paid by defendant, were based upon a Class 35 rate in J. P. Playnes’ Freight Tariff 1016, whereas the General Accounting Office claimed a Class 35 rate in Pacific Freight Tariff Bureau Tariff 234-C was applicable. Both the plaintiff and defendant apply their respective Class 35 rates under the provisions of EC-WTA Section 22 Quotation 64-A, which provides on the instant traffic a “class or column 35 [rate] published in tariffs lawfully on file with the Interstate Commerce Commission.”
(b) It is plaintiffs’ contention that the 35 percent of first class rate applied by the General Accounting Office was cancelled by Supplement 52 to PFTB Tariff 234^0. It is defendant’s position that Supplement 52 did not cancel that Class 35 rating.
11. The parties have agreed that for the purposes of this action, the following definitions are true and correct:
(a) Freight Glassification — a tariff publication containing a list of articles to each of which is assigned a class or category for the purpose of applying class rates, together with governing rules and regulations.
(b) Freight Olassifteation Batmg — the class or category to which a particular article is assigned for the purpose of applying class rates.
(c) Freight Glassification Territory — a defined area within which a particular freight classification applies. Official Territory in which the Offical Classification applies comprises the area north of the Ohio and Potomac Eivers and east of Lake Michigan and a line drawn between Chicago and St. Louis. Southern Territory comprises the area south of Official Territory and east *461 of the Mississippi River. Western Territory is the remaining area of the United States.
(d) Official, Southern, and Western Classifications— each territory has a tariff publishing the class ratings applicable in each territory. These publications are known as the Official, Southern, and Western Classifications but are published in one volume or tariff known as the Consolidated Freight Classification or the Uniform Freight Classification.
(e) Class Ratings in Western Classification — at the time of shipment m this case freight was classified in the Western Classification as taking one of the following ■classes: 1, 2, 3, 4, 5, A, B, C, D, E. Class 1 was higher than class 2, class 2 higher than class 3, class 5 higher than class A and so forth.
(f) Class rate — once the class rating for a particular commodity is determined from the classification it is necessary to determine the class rate for that rating. The class rate is the amount of money per unit of traffic carried applicable to a commodity taking a particular class rating.
(g) Class 35 — means 35 percent of the class 1 rating. For example, if the class rate for an article rated class 1 is $1.00 per hundred pounds, the class 35 rating would yield a class rate of 35 cents per hundred pounds. Classification ratings by percents of first class is another method of publishing ratings in addition to or in lieu of the class 1, 2, 3, 4, 5, A, B, C, D, E method.
(h) Colvmvn 35 — in tariffs publishing class rates applicable to commodities rated by percents of first class, the rates in a column headed by 35 (35 percent of first class) are known as column 35 rates.
(i) Section 22 Quotation — a special rate tender authorized under Section 22 of the Interstate Commerce Act by which the carrier offers transportation services to special persons free or at reduced rates from those provided for under published tariffs.
12. The plaintiff and defendant have agreed that if the Class 35 rate published in PSCFB Tariff 234-C, as sought by defendant, is held applicable, the plaintiffs owe defendant the sum of $210.91. The parties also have agreed that if the Class 35 rate published in NPCFB Tariff No. 1016, as sought by plaintiffs, is applicable, the defendant owes plaintiffs the sum of $10,545.73.
*462 CONCLUSION OF LAW
Upon tbe foregoing findings of fact, which, are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are entitled to recover and that defendant’s counterclaim should be dismissed. Judgment is therefore entered for plaintiffs in the sum of $10,545.73, and defendant’s counterclaim is dismissed.

 Section 66 (49 U.S.C. (1958)), reads in pertinent part:
Payment for transportation of the united States mail and of persons or property for or on behalf of the united States by any common carrier subject to the Interstate Commerce Act, as amended, * * * shall be made upon presentation of bills therefor, prior to audit or settlement by the General Accounting Office, but the right is reserved to the united States Government to deduct the amount of any overpayment by any such carrier from any amount subsequently found to be due such carrier. The term “overcharges” shall be deemed to mean charges for transportation services in excess of those applicable thereto under the tariffs lawfully on file with the Interstate Commerce Commission * * * and charges in excess of those applicable thereto under rates, fares, and charges established pursuant to section 22 of this title : * * *