## CHICAGO & E. I. RY. CO. v. UNITED STATES.

### No. 9709.

District Court, N. D. Illinois, E. D.

Sept. 30, 1930.

John F. Connors, of Chicago, Ill., for plaintiff.

Elmer B. Collins, Sp. Asst. to Atty. Gen., and J. Stanley Payne and Daniel W. Knowl-

ton, both of Washington, D. C., for the United States.

Before SPARKS, Circuit Judge, and WILKERSON and WOODWARD, District Judges.

SPARKS, Circuit Judge.

This proceeding was instituted under the Act of Congress approved Oct. 22, 1913, 38 Stat. 219 (28 USCA § 43), for the purpose of having enjoined, set aside, annulled, and suspended an order of the Interstate Commerce Commission, hereinafter referred to as the Commission, entered January 15, 1930, in Sand, Gravel and Crushed Stone from Indiana and Illinois Points to Destinations in Illinois, Docket No. 21939; Ohio & Indiana Stone Company et al. v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company et al., Docket No. 21372; and Sand, Gravel and Crushed Stone from Indiana to Destinations in Illinois, Investigation and Suspension Docket No. 3093.

The order of the Commission was required to be made effective on or before March 31, 1930, and required that tariffs covering the rates therein ordered should be filed with the Commission and published not less than twenty days before March 31, 1930.

Plaintiff issued, on August 5, 1928, to become effective September 7, 1928, its Supplement No. 5 to Freight Tariff No. 505–A, Interstate Commerce Commission No. 241, Illinois Commerce Commission No. 196. In that supplement plaintiff proposed to reduce its rates on sand and gravel from the pits on its line at Summit Grove, Ind., to stations on its line in Illinois, from St. James, Ill., to Mt. Vernon, Ill., from $1.12 per net ton to $1.01 per net ton, and from Terre Haute, Ind., via its line to maintain a differential of ten cents over its Summit Grove rates from Terre Haute, Ind., which in effect would have been a reduction of one cent per net ton in the Terre Haute rate. The changes proposed by plaintiff were not permitted by the Commission to become effective, but were suspended under its Investigation and Suspension Docket No. 3093, in its first supplemental order in that proceeding, the original investigation and suspension proceeding covering a suspension of rates of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company.

By complaint filed with the Commission on August 13, 1928, against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Chicago & Eastern Illinois Railway Company (plaintiff herein), Chicago,

Burlington & Quincy Railroad Company, Illinois Central Railroad Company and Pennsylvania Railroad Company, the complainants therein, Ohio & Indiana Stone Company, and Midwest Crushed Stone Company, alleged that the rates on crushed stone from Greencastle, Ind., to destinations in Southern Illinois on the Illinois Central Railroad, Chicago & Eastern Illinois Railway, and Chicago, Burlington & Quincy Railroad, were unreasonable and unduly prejudicial to said complainants, and unduly preferential of producers of crushed stone at Lehigh and Thornton, Ill.; Thornton being located on the line of railroad of plaintiff herein and on the line of railroad of the Illinois Central Railroad Company.

On February 11, 1929, under its Docket No. 21939, the Commission entered an order upon its own motion, instituting an investigation into and concerning the lawfulness of the interstate rates on sand, gravel, and crushed stone from points in Indiana to destinations in Illinois on the Toledo, Peoria & Western Railroad, and on and south of the Terre Haute-St. Louis line of the Pennsylvania Railroad; also upon the question of the lawful relationship or relationships existing between such interstate rates, on the one hand, and the corresponding Illinois intrastate rates to the same destinations, on the other hand. The order of the Commission was amended April 1, 1929, to include crushed stone in carloads from Marquette, Mo., and Cape Girardeau, Mo., and on chatts, carload, from producing points in Missouri on the Mississippi River & Bonne Terre Railway, the Missouri-Illinois Railroad, and the Missouri Pacific Railroad, and to determine the question of the lawful relationship or relationships between such interstate rates, on the one hand, and the intrastate rates on sand, gravel, and crushed stone in carloads from Illinois producing points to the same destinations, on the other hand. The investigation also included complaints before the Illinois Commerce Commission by said shippers located at Anna and Cairo, Ill., who sought a readjustment of rates to Southern Illinois destinations. The latter complaints were covered by Illinois Commerce Commission Docket No. 17841, H. H. Halliday Sand Company et al. v. Baltimore & Ohio Railroad Company et al., and by Illinois Commerce Commission Docket No. 17863, Anna Stone Company v. Baltimore & Ohio Railroad Company et al.

Section 17(1) of the Interstate Commerce Act, as amended (49 USCA § 17(1), provides:

"That the Commission may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice."

Under the authority of this provision the Commission has provided for several different methods of procedure. The simplest is known as the informal procedure, under which the complaint is handled by correspondence; and if an adjustment is effected, it is the result of the voluntary action of the carriers. If the matter is not susceptible of such informal adjustment, it is then necessary for complainant to seek relief by filing formal complaint. When this is done the case is handled under one of four methods:

1. A complete development of the facts by evidence.

2. The "shortened" procedure, in which the facts are developed by the submission of memoranda and reply memoranda, under oath, without oral hearing.

3. The "modified" procedure, which contemplates memoranda in reference to such matters as the parties do not dispute, and the taking of testimony upon remaining matters.

4. The "conference plan," the essential feature of which is an informal conference between the interested carriers and shippers before the examiner or presiding commissioner, with the object of reaching an agreement as to the facts and disposition of the controversy; and in the absence of a complete agreement the case proceeds to determination in the regular way.

Pursuant to orders and notices given by the commissioners, an attempt was made to effect an agreement or compromise under the fourth method, or "conference plan." There was a series of conferences on March 12, 13, and 25, and on May 15, 16, and 17, 1929. The proceedings were entirely informal. No testimony under oath was taken, and only a small portion of the proceedings were recorded. The examiner appointed a committee of eleven or twelve men from those represented at the conference to make a report showing distances, routes, and present rates, both single and joint line, from producing points in Missouri, Illinois, and Indiana, to destination points in Illinois, together with proposals and recommendations as to the schedule of rates which should be adopted. The committee made a final report and recommendation of rates, which recommendation was based partly on statements and concessions made by the members of the conference while attempting to compromise their differences. The report was not unanimous, and was objected to by plaintiff and others. For this reason it was not approved by the conference under the "conference plan" of procedure, and adjournment was taken until May 27, when a hearing of evidence was had.

█ Upon the hearing, as a part of the evidence received, Member Pister of the committee, at the request of the examiner, offered the report of the committee in evidence. Plaintiff objected on the ground that it contained and was based upon testimony given as a basis for compromise, and that it was not agreed to by plaintiff. The examiner overruled the objection and admitted the report. This we think was error. It is true the record shows that Webster, general freight agent and traffic witness for plaintiff, but not an attorney, withdrew his objection to the recommended rates being received as evidence, provided the record was made to show plaintiff's disagreement with such rates and its objection thereto. It is quite evident that the witness was merely stating his position as to the suggested rates from a traffic and not a legal standpoint. Mr. Connors was the only legal counsel for plaintiff. He objected to the admission of the report, and that objection was never withdrawn.

It must be remembered that up to the time of the formal hearing the case had proceeded under the "conference plan," with the purpose of securing a compromise. The parties were invited to talk freely, and they did so in a spirit of compromise. Proposals of rates were made, in many instances with definite reservations that they should not be used against the proposers in cases which might later arise. In order to preserve the efficacy of the "conference plan," it is quite imperative that the proceedings thereunder be held in the strictest confidence, and that the facts thereby obtained should never be used against the participating parties unless by agreement, or unless fully substantiated by other evidence. To do otherwise would defeat the very purpose for which the method of procedure was established.

█ The complaint alleges that error was committed by the examiner in limiting cross-examination of the members of the committee as to their report and recommendations. Referring to such witnesses before they took the stand, the examiner said:

"They will be subject to cross-examination only with respect to the facts set forth in their respective statements."

Later, when Member Pister was on the stand, the following cross-examination ensued:

"Mr. Burchmore: Is it not true that this page indicates, taken in connection, or in conjunction with, page II, that you agreed to a rate of $1 for 88 miles from Metropolis, Chicago and Eastern Illinois joint line haul, and a rate of $1.20 from Metropolis to Mt. Vernon, Illinois Central, Southern Railway, and a rate of $1.01 from Terre Haute to Metropolis, two line haul, Big Four, Chicago and Eastern Illinois?

"Mr. Pister: I object to the question. * * *

"Mr. Burchmore: Mr. Examiner, I addressed this question to the witness having prefaced it with a prior question which indicated he was a member of the committee which issued this report. The report was received in evidence as an exhibit over my objection. * * *

"Examiner Fuller: I will sustain the objection to the question."

Member Jones then testified:

"I was a member of the committee of shippers whose names are shown on the document received as Exhibit C. I participated in that committee to the fullest extent possible along with any of the others that were members of that committee with the theory that perhaps a solution of this rather difficult rate situation could be compromised. It was my work as a member of that committee to endeavor to compromise it.

"Mr. Burchmore: Did you agree on behalf of your company to such certain rates from your quarry—

"Examiner Fuller: I do not think we ought to ask the witness any questions of that kind. His position is stated on the record of May 16th and 17th. I am going to so rule.

"Mr. Burchmore: I was going to examine him further along that line with respect to specific destination, but of course I will respect your ruling.

"Examiner Fuller: All right.

"Mr. Webster: Mr. Examiner, I have heard several times, statements made about the evidence of May 16th and 17th being in the record. * * * I assume there is no objection on the part of anyone changing his evidence if he feels your record does not truly reflect his situation?

"Examiner Fuller: This statement of the position of the parties of May 16th and 17th speaks for itself.

"Mr. Webster: Was it taken under oath, Mr. Examiner, a sworn statement?

"Examiner Fuller: I am not talking about the facts. I am talking about the position of the parties. What exceptions they reserve, and so forth.

"Mr. Webster: In this proceeding, as I understand it, witnesses are under oath to testify, and, of course, if there is anything different in their position now than what is shown in their statement of their position at that time, I presume it can be brought out here.

"Examiner Fuller: We ought to limit it to the facts set forth in the exhibit."

Similar questions were put to other witnesses who were members of the committee, and the cross-examination was likewise limited. We are of opinion that in each instance the answer should have been permitted. In view of the fact that rates were being imposed upon plaintiff by a majority vote of the committee, over the persistent and insistent objections of plaintiff, we think a much wider latitude in cross-examination of the members of the committee should have been accorded. These witnesses had not only presented their respective statements, but they had voted adversely to plaintiff on other matters which vitally affected it. We are not at present concerned with the correctness of that vote or the rate so imposed, and we refrain from expressing an opinion in respect thereto; but we are convinced, under the circumstances, that plaintiff should have been given a much wider scope in cross-examination, and in failing to grant it there was error.

■ We are fully cognizant that a very wide latitude ought to be, and is, given to the Commission in the presentation of cases and the introduction of evidence; but this ought not to be carried to the extent of admitting prejudicial evidence which is clearly incompetent, nor to precluding a full and fair cross-examination of adverse witnesses.

We have read the record submitted, and we find no substantial evidence from which any of the following facts may be inferred:

1. That any advantage or disadvantage has resulted from the disparity of rates complained of by the shippers;

2. That loss of profits to shippers, if any, is due to alleged undue prejudicial rates;

3. That shipments have been made or prevented by reason of alleged disparity of rates.

Under the rulings of the Commission the proof of these facts seems to be necessary. Nashville Machine & Supply Co. v. Louisville

& Nashville Railroad, 118 I. C. C. 577, 579; Scharff-Koken Manufacturing Co. v. Atchison, Topeka & Santa Fe Railway Co., 151 I. C. C. 270, 276, 277; Woodsum Coal Co. v. N. Y., N. H. & H. R. Co. et al., 156 I. C. C. 243, 246; Drake Marble & Tile Co. et al. v. Southern Railway Co., 148 I. C. C. 725, 730, 731.

In our opinion, for the reasons above assigned, plaintiff is entitled to recover, and a permanent injunction will issue.