**BALTIMORE & O. R. CO. et al. v. DOMESTIC HARDWOODS, Inc., et al.**

**No. 5737.**

Court of Appeals of the District of Columbia

Argued April 4, 1933.

Decided May 8, 1933.

John J. Hamilton, Charles Clark, Geo. E. Hamilton, Geo. E. Hamilton, Jr., and Henry R. Gower, all of Washington, D. C., for appellants.

H. L. McCormick, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellants are interstate carriers. Appellees are lumber companies. We shall speak of the former as the carriers and the latter as the shippers.

Shippers between April 9, 1926, and November 2, 1926, delivered to the Tuckaseegee & Southeastern Railway Co., the initial carrier, at East Laport, N. C., 23 carload lots of lumber consigned to Toronto, Canada. Shippers directed that the shipments move via Cincinnati, Ohio. The freight rate charged

and collected was based on a combination commodity rate determined by adding to the rate from Laport to Cincinnati the rate from Cincinnati to Toronto. The aggregate was 58.5 cents per hundred pounds. Shippers claim that the rate charged should have been 53 cents, and to recover this overpayment filed a claim with the delivering carrier, Canadian Pacific Railway, March 19, 1929. The claim was disallowed November 6, 1929, and on December 13, 1929, shippers made complaint to the Interstate Commerce Commission, alleging that the rate collected was inapplicable. The ground was that the combination rate charged was subject to the rule for constructing combination rates published in Jones' Tariff, I. C. C. U. S. 1, and that the application of this rule would result in a rate of 53 cents. The carriers denied that Jones' rule was applicable, because, they contended, it applied only where no through tariff rate was published from point of origin to point of destination, which, they said, was the case when the shipments in question moved.

The Commission awarded reparation, saying in their report: "When these shipments moved a joint rate of 59.5 cents was in force from East Laport to Toronto, but was restricted to apply only via the Virginia and Maryland gateways. This rate was applicable in connection with the originating line to which these shipments were tendered. Defendants contend that the existence of the joint rate via the Virginia and Maryland gateways defeated the application of the combination rule to the factors applicable over the route of movement, under the language employed in the tariff which provides that the rule is applicable 'where no published through rates are in effect from point of origin to destination.' We have repeatedly found that the combination rule applies to combination rates over routes where no joint rates are applicable, regardless of whether joint rates are maintained from and to the same points over other routes. Wausau Southern Lumber Co. v. A. G. S. R. R. Co., 142 I. C. C. 521."

Carriers refused to obey the reparation order and refund the overcharge assessed by the Commission. Shippers thereupon commenced this action in the Supreme Court of the District of Columbia. Carriers demurred to the declaration, and, after the demurrer was overruled, refused to plead further, whereupon judgment was rendered against them and an appeal taken to this court.

The points argued here are as follows:

First. The court erred in holding as a matter of law that the Interstate Commerce Commission, at the time complaint was filed with it, had jurisdiction.

Second. That the Interstate Commerce Act statute of limitations barred the right of recovery.

Third. That the Commission's decision and order were contrary to law and insufficient to support the reparations order.

We will discuss these points briefly in the order in which they are stated above.

First. The basis of the claim the Commission is without jurisdiction is grounded on the theory that under the terms of the Commerce Act a claim for overcharge is exclusively within the jurisdiction of the courts. The point is that the controversy involves no question of fact, but, on the contrary, turns upon the meaning of the language used in the tariff, and that in such circumstances the question is one of law, and therefore preliminary resort to the Commission is not necessary.

Section 9 of the Interstate Commerce Act (title 49 USCA § 9) provides: That "any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district [or circuit] court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. * * * *"

Relying on this section, the shippers filed their claims with the Commission, asking for an order for the amount collected in excess of the legal tariff rates in effect when the shipments moved. Section 6 of the act (49 USCA § 6) declares that no carrier shall charge or receive a greater amount of compensation for transportation of property than the rates specified in the tariff filed and in effect at the time. And section 8 (49 USCA § 8) makes the carrier liable to any person injured for the full amount of damages sustained in consequence of any such violation of the act; and section 9, quoted in full above, makes it optional with the person injured to apply to the Commission or to bring suit in a court of proper jurisdiction.

The language of the act supports the position of the shippers, but carriers insist that there are many cases in which a violation of the provisions of the act is charged in which it has been determined that the Commission has exclusive primary jurisdiction, notwithstanding the optional provisions of the act, and from this they argue that, since it is held that in questions involving technical interpretation of the tariffs resort must first be had to the Commission, it would follow logically that, where only a question of law is to be decided, the courts would have exclusive jurisdiction, but they say very frankly that no case has yet so decided.

In order to sustain carriers' position, we should have to break new ground and disregard, not only the express statutory right to an aggrieved party to go either to Commission or court, but likewise to overturn an established practice hitherto unchallenged.

In the Abilene Cotton Oil Case, 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, the Supreme Court held that, on a suit for recovery of damages because of the application of an unjust and unreasonable rate, there must be a primary application to the Commission; in other words, that the action of the Commission in determining whether the rate was unjust or unreasonable was a condition precedent to the institution of the suit.

So in the Merchants' Elevator Case, 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943, the Supreme Court held, in a case in which only the construction of the words of a written instrument was involved, as the result of which the construction rested solely on a question of law, it was not necessary to resort first to the Commission.

But there is nothing in either conclusion which will support carriers' position here. Compare Baltimore & O. R. R. v. Brady, 288 U. S. 448, 53 S. Ct. 441, 77 L. Ed. 888, decided March 13, 1933. The ground of the holding in the first grows out of the necessity of having the expert judgment of the Commission on the subject of what is and what is not an unjust and unreasonable rate. The determination of that question is not only a function of the Commission, but involves a question not in its nature judicial or such as a court ordinarily could answer. And so likewise the conclusion in the other case is based on the same ground but from the opposite point of view, namely, that, where no expert knowledge is required, the provisions of the law which give the injured party the right to go to the courts is operative without resort first to the Commission.

There is force, of course, to the contention that, since the present suit is a claim for the recovery of overcharges and since the tariffs are plain and unambiguous, and hence do not require administrative interpretation, and since the Commission's finding is not self-executing, but requires court action to sustain it, it might be thought unreasonable that Congress meant to provide this double-barrel action to collect the money damage, but, whatever force there may be to this assumption, it is not permissible to adopt it in this case, if for no other reason, because the act in terms provides the right, and by an unbroken course of procedure hitherto the Commission has exercised it without question. To overturn this on the theory that the Commission's functions are confined to intricate technical questions with respect to transportation tariffs, or because of the fact it had been held in some cases necessary to resort to it first notwithstanding the optional provisions of the law, would be, it seems to us, to substitute a rule of our own making for the unambiguous language of the statute. But there is another answer just as compelling, namely, in those cases in which the courts have held that in the class of claims last mentioned resort must be had to the Commission first, the reason of the holding was that the courts are without knowledge or machinery to determine the main issue. But in a case like this it cannot be said that the Commission is any less able than the court to decide it, and we assume it is a fact that, of the vast number of cases in which the Commission has issued orders for the refund of an overcharge, the great majority were paid without the necessity of further action.

On the whole, we are of opinion that, in view of the entire absence of any language in the statute which would support the conclusion we are asked to reach in this respect, to do so would be to import into the statute something which is neither there nor from which a necessary implication to that effect may be said to follow. The statute merely makes the order of the Commission prima facie evidence of the facts therein stated. If the order is not obeyed, resort must be had to a court of competent jurisdiction, and the ordinary law rules which apply in ordinary cases afford to the carrier whatever relief it is entitled to.

Second. Carriers contend that the claim is barred by the statute of limitations

The point as to this is that the claim for overcharge was filed with the Canadian Pacific Railway, a Canadian carrier; that the Canadian Pacific is not subject to the Commerce Act (49 USCA § 1 et seq.), and therefore the claim was abortive to toll the statute, and hence thereafter, when the claim was filed with the Commission, the statutory period had run. The act provides [section 16 (3) 49 USCA § 16(3)] that actions for overcharges shall be begun within three years from the time the cause of action accrues, provided that, if the claim for overcharge has been presented in writing to the carrier within the three-year period, the time shall be extended six months from the time of rejection of the claim. Admittedly the claim was filed with the Canadian Pacific Railway prior to the end of the three-year period, and likewise admittedly petition to the Commission was filed prior to six months from the rejection of the claim, but after the three-year period. If, therefore, the filing of the claim with the Canadian Pacific Railway was not such a filing as would bring into operation the six months' extension, the carriers' contention is correct.

It was said in the argument that the point here raised was not raised before the Commission. The record before us does not permit us to say where the delivery of the carload shipments in question to the Canadian Pacific were made, but we know as a matter of common knowledge that the lines of the Canadian Pacific do extend into the United States, and as to those lines within the United States the Commission has jurisdiction. We also know that none of the lines of the American carriers handling this shipment extend into Canada. We think it safe, therefore, to assume that the shipments were delivered to the Canadian Pacific in the United States. If shippers are entitled to recover in this case, they are entitled to recover from all the carriers, either jointly or severally. In view of this, we think it not going too far to say that notice to one of the carriers was notice to all. The act requires no other notice than that which was given. The Canadian Pacific was the delivering carrier; and, whatever may be the jurisdiction of the Commission with regard to it generally, there can certainly be no question of its liability under the law if the shipment is received by it within the United States, for as to its operations in the United States it is subject to our laws. We think New York Central v. Chisholm, 268 U. S. 29, 45 S. Ct. 402, 69 L. Ed. 828, 38 A. L. R. 1048, not in point. Without regard, therefore, to the question whether the Inter-

state Commerce Act has any effect in Canada, we are of opinion that the provisions of that act apply in the circumstances we have detailed. The shipment moved from North Carolina over various roads for final delivery by the Canadian Pacific. It was received by that line in the United States. The latter was, therefore, a part of the connecting system of transportation used; and, if resort had been had to the courts rather than to the Commission in the first instance, we know of no reason why an action, begun by attachment against the property of the Canadian Pacific in the United States, could not have been maintained.

 Third. It is insisted by the carrier that the Commission's order is contrary to law. The ground of this is that in applying the Jones' rule the Commission erred in a matter of law. As we have already seen, the shipments moved from North Carolina via Cincinnati, this route being designated by the shipper. There was no joint through rate in effect via this route, but there was such a rate in effect via the Virginia-Maryland gateways. Charges were collected by adding the rate from North Carolina to Cincinnati and from Cincinnati to Toronto. Both rates were subject to the rule for constructing combination rates, known as "Jones' rule." The application of this rule would have resulted in a rate of 53 cents instead of 58.5 cents, as charged. The question whether the rule was applicable depends upon the construction of the language in each and all of the tariffs providing that, where no published through rates are in effect from point of origin to destination, the rule shall be used; or, stated otherwise, where there is a through rate from origin to destination the rule does not apply.

The Commission held, as is shown by the portion of their report heretofore quoted, that the provision that the Jones rule should not apply where there is a through rate is confined to a published through rate over the route by which the shipment travels; that is to say, that, though there may be in effect a through rate via a different route, that through rate will not defeat the applicability of the Jones rule where some other route is chosen.

It is admitted here that, if the Jones rule does apply, there was an overcharge. It is equally admitted that, if the proviso that the rule should not apply where there is a joint rate is applicable, there is no overcharge. The single question in this aspect of the case, therefore, is whether the construction of the language of the proviso

492

by the Commission is correct. The position that the carriers take is that the Jones rule is applicable only where there is no joint through rate via any route. This the Commission held was not the correct interpretation, and we find ourselves in agreement with their conclusion, though it is fair to say, if the question were one as to which the Commission had made no ruling, the determination would present more difficulty, for the language is undoubtedly broad enough to be construed as contended by carriers. But it should be remembered that the question involves more than the mere interpretation of words—it really goes to the interpretation and construction of railroad rates and routings, which is a technical subject, and as to which the Commission is presumed to have, and doubtless has, expert knowledge superior to that possessed by a court. But, considered otherwise, we do not think the construction placed by the Commission on the proviso is strained, unreasonable, or unnatural. For instance, it is entirely conceivable that a through rate might be established covering a route several hundred miles longer than some other route, or over a route through congested centers, the use of which would delay the shipment a materially longer period in delivery. And, if the shipment be conceived of as perishable, this through rate would obviously not be available for such class of shipment. In such a case to say that because of this unusable through rate and route the rule which would otherwise apply would not apply would be an anomaly. The rule was created and adopted to avoid inequality as well as excessive rates and to maintain a harmonious rate adjustment. Without it, shippers using the combination rates would be required to pay more ordinarily than those who were able to use the through rate. The rule avoided this inequality.

In the case at bar the single-rate tariffs, that is to say, the tariffs from Laport, N. C., to Cincinnati, and Cincinnati to Toronto both adopted the Jones rule; that is to say, both made the rates published subject to Jones rule. The shippers here had the right to the selection of their route, and they had the right to have applied the Jones rule in the reduction of the combination rate, unless, as we have already remarked, the establishment of a through rate by the Virginia-Maryland gateways made the rule ineffective. If we should say it did, the carriers could in all cases of combination rates avoid the rule by establishing a through rate impossible in practical use. The Commission, who know best about such matters, have avoided this result by refusing to allow it to be done, and nothing presented to us impels us to a contrary view.

From this it follows that the decision of the lower court was right and should be affirmed.

Affirmed.