### W. P. BROWN & SONS LUMBER CO. et al.
### v. LOUISVILLE & N. R. CO. et al.
#### No. 6915.

Circuit Court of Appeals, Sixth Circuit.

March 6, 1936.

J. Van Norman, of Louisville, Ky. (Norman, Quirk & Graham, of Louisville, Ky., on the brief), for appellants.

Elmer A. Smith, of Chicago, Ill. (J. Blakey Helm, Edward D. Mohr, and Marvin Taylor, all of Louisville, Ky., and Horace L. Walker, of Washington, D. C., on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The controversy is between shippers of lumber and carriers in respect to construction of a rule in freight tariffs commonly known as the combination rule. An understanding of the point in dispute requires exposition of its historical setting.

From the principal sources of lumber supply in the south and southwest to the centers of consuming territory in the north are many rail routes served by numerous carriers. Shipments of lumber move either at through rates or at combination rates from points of origin to their destination. The through rate is what its name implies, and the combination rate is made up of the

local rates of carriers contributing to the route of movement. In 1916 the President of the United States took over control of railroads. By the Federal Control Act of 1918 (40 Stat. 451) he was authorized to initiate rates. Increases becoming necessary, by General Order 28 of the Director General of Railroads both through rates and local rates were raised. The result was that where shipments moved over a route for which there had been in effect a published through rate there was but one increase in that rate, but where it moved over a route served by a combination of carriers, each of whose local rates was increased but for which there was no published through rate, the shipper would pay a double and sometimes a triple increase in freight. To avoid the inequality between shippers having access to stations which published through rates and those which had not, the carriers published what is known as the combination or "Jones" rule, which, so far as applicable, is as follows: "Where no published through rates are in effect from point of origin to point of destination on lumber and articles taking same rates, * * * such through rate will be arrived at in the following manner. * *" Then follows the formula by which the applicable rate is determined. The purpose of the rule was concededly to insure that a shipper whose rate was made up of two or more local rates would pay but one increase in the total through rate, just as a shipper to whom was available a published through rate from the point of origin to destination would likewise pay but one increase.

The appellants shipped lumber over routes in respect to which there were no published through rates from point of origin to destination. The carriers collected freight on the basis of the local rates in effect over such routes without adjustment by the application of the formula. The shippers complained, and then initiated a proceeding before the Interstate Commerce Commission to obtain a refund of overcharges on the ground that the combination rule was applicable to their shipments. The Commission made awards of reparation on February 9, 1932, in what is known as the case of Wausau Southern Lumber Co. et al. v. Alabama Great Southern R. Co. et al., 142 I.C.C. 521; Id., 182 I.C.C. 731. While some of the carriers accepted the decision of the Commission, the present appellees stood their ground, and in consequence the shippers filed suit in the court below under section 16 (2), of the Interstate Commerce Act, 49 U.S.C.A. § 16 (2). On demurrer to the petition, the District Judge sustained the contention of the carriers that the combination rule was clear and unambiguous, requiring no construction, that the award of the Interstate Commerce Commission was based upon a conclusion of law and so not binding upon the court; found as a fact that there were through rates applicable to the shipments involved, concluded that the combination rule did not therefore apply to such shipments, and dismissed the petition. It is from the order of dismissal that the appeal is taken.

The first question to be determined is the conclusiveness of the Commission's awards. If the question were one of fact, or involved the exercise of administrative discretion, we are bound by the decision. The Commission, however, was asked to construe a railroad freight tariff. No question was before it as to reasonableness of rates, and while existence of through routes was involved, there was no controversy as to the fact, and no question decided as to the reasonableness of the routes. The question was one of law, and while great deference will be paid to the Commission's conclusions, we are not bound by them. Chicago, Milwaukee & St. Paul R. Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 99, 40 S.Ct. 504, 64 L.Ed. 801; U. S. v. Missouri Pacific R. Co., 278 U.S. 269, 280, 49 S.Ct. 133, 73 L. Ed. 322. The problem of ascertaining the proper interpretation to be given to a tariff provision is akin to that to be given any other document. Great Northern Railway Co. v. Merchants' Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943.

We come then to the wording of the combination rule. The formula is to be applied "where no published through rates are in effect from point of origin to point of destination." The language appears to be clear enough, and there is absent any express qualification thereon. The shippers would, however, have us insert a limitation. They say it necessarily means that the formula is to be applied where no published through rates are in effect over the route of movement, even though in effect over other routes, and that the clause should be interpreted as though it read, "Where no published through rates are in effect (via route of shipment) from point of origin to point of destination," and that so it has been practically construed by carriers and shippers for many years. Freight tariffs

must, however, be applied as written, Western Grain Co. v. St. Louis-San Francisco R. Co., 56 F.(2d) 160 (C.C.A.5), and effect must be given if possible to every word, clause and sentence. Pillsbury Flour Mills Co. v. Great Northern R. Co., 25 F.(2d) 66 (C.C.A.8); Chicago Great Western R. Co. v. Farmers' Shipping Ass'n, 59 F.(2d) 657 (C.C.A.10); Updike Grain Corporation v. St. Louis & S. F. R. Co., 52 F.(2d) 94 (C. C.A.8). The practical construction of the parties to a contract is not permitted to defeat the clear language of the instrument. Norton Iron Works v. Standard Slag Co., 13 F.(2d) 622, 623 (C.C.A.6). Where there is no occasion for construction, the court will be less hesitant to overturn a prior understanding, even though it may have been acted upon for many years. U. S. v. Missouri Pacific Ry. Co., supra, 278 U.S. 269, at page 280, 49 S.Ct. 133, 136, 73 L.Ed. 322. Further observations in that case in respect to construction by the Commission of a section of the Interstate Commerce Act are peculiarly applicable here.

"The language of that provision is so clear and its meaning so plain that no difficulty attends its construction in this case. Adherence to its terms leads to nothing impossible or plainly unreasonable. We are therefore bound by the words employed and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. * * * Construction may not be substituted for legislation."

It would seem to be clear that when lumber is offered for shipment to the carrier over a designated route, the initial inquiry by the carrier under the guidance of the rule must be as to the existence of a published through rate for the shipment to its destination. If there is no such rate, the formula must be applied to a reduction of the combined local rates. If there is such published through rate, the formula is not applied. There is nothing complicated about it, and the shipper having a through rate available is subjected to no unreasonable or inequitable exaction.

The shippers contend, however, that the carriers themselves concede ambiguity to the rule by asserting it, not in strict literalness, but as though it read, "Where no published through rates (to which the initial carrier is a party) are in effect from point of origin to point of destination." This is to say that the combination formula must be applied only where there is no published through rate from point of origin to desti-

nation over the lines of the carrier receiving the shipment, notwithstanding there may be through rates over other lines. But the carriers reply that this is precisely what the rule says, that it can refer only to applicable rates, and that nothing has to be read into it to give it this meaning. This may be a complete answer, but even if not, we fail to see how ambiguity in respect to one point in the rule compels interpolation of a limitation in respect to another point. Whether the lack of a published through rate over the lines of the receiving carrier, or the lack of any through rate, conditions the application of the formula, has no bearing upon whether the rule requires construction making applicable the formula where there is no through rate over the route of movement. In any event, the point is not here involved, because the shipments upon which refunds are claimed all originated with carriers who were parties to through published rates at the point of origin.

Finally it is urged that the decision in Baltimore & Ohio Railroad Co. v. Domestic Hardwoods, Inc., 62 App.D.C. 142, 65 F.(2d) 488, approving the construction of the Commission upon the rule before us, is conclusive of this case. Persuasive it might be, were its reasoning fully to commend itself to us. In what respect it controls our decision we are unable to understand. If upon the ground that certiorari was denied by the Supreme Court (290 U. S. 647, 54 S.Ct. 64, 78 L.Ed. 561), then the answer must be in the language of that court: "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." Atlantic Coast Line R. Co. v. Powe, 283 U.S. 401, 403, 51 S.Ct. 498, 499, 75 L.Ed. 1142. United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361. The Court of Appeals of the District of Columbia in the Baltimore & Ohio Case sustained the Commission's construction on the ground that it was conceivable that through rates might be established over longer routes and through congested centers which would so increase costs and delay delivery as to be unavailable to shippers requiring dispatch, shipping perishable merchandise, and others. The court, however, apparently overlooked the fact that the Commission has power to require carriers to establish additional through routes whenever necessary or desirable in the public interest, and the power to fix rates over such

routes under section 15, paragraph (3), of the Interstate Commerce Act (49 U.S.C.A. § 15 (3), and that there was in that case no question in respect to the exercise of the administrative powers of the Commission. Likewise there is none here. Even so, the court recognized that it would have had no great difficulty in accepting the carriers' view were it not upon a question as to which the Commission had made a ruling, and it followed the Commission's ruling on the theory that the question involved a technical subject, as to which the Commission is presumed to have expert knowledge superior to that of the court. We perceive, however, no inherent technical question in determining whether the rule means what it says, and so find no occasion for adding to it a limitation which is nowhere implied and which no exigency requires. We are therefore unable to follow the reasoning of the Court of Appeals of the District of Columbia to its conclusion.

The order of the District Court is affirmed.