**MISSOURI–KANSAS–TEXAS R. CO. v.
SINCLAIR PRAIRIE OIL CO.**

No. 1961.

Circuit Court of Appeals, Tenth Circuit.

June 3, 1940.

M. D. Green, of Oklahoma City, Okl., and Robert Thompson, of Dallas, Tex. (C. S. Burg, of St. Louis, Mo., and Jno. E. M. Taylor, of Oklahoma City, Okl., on the brief), for appellant.

Summers Hardy, of Tulsa, Okl. (Edward H. Chandler and Paul B. Mason, both of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The judgment from which this appeal is prosecuted is based upon an order of the Interstate Commerce Commission by reason of certain overcharges arising out of collection by the Fort Smith & Western Railway Company, initial connecting carrier, of through transportation charges on seven tank car shipments of casinghead gasoline from Boley, Oklahoma, to Meraux, Louisiana, in December, 1938.

Demurrer on part of appellant to complaint on ground that cause of action was barred by limitation being overruled, answer was filed and case submitted to the court without intervention of a jury, and a finding was made and judgment rendered in favor of appellee.

The assessed rate on the shipments moving between points of origin and destination had been duly filed with the Interstate Commerce Commission. A rate of 45.5 cents from Boley to New Orleans over the through route of movement is shown in Southwestern Lines Tariff No. 79–K, Section 1, page 28, J. E. Johanson's I. C. C. No. 2037, then in force. In Exhibit "A", attached as part of plaintiff's (appellee) complaint, it is alleged: "The charges assessed were based upon an inapplicable rate of 45.5¢ per cwt., published in Southwestern Lines Tariff No. 79–K, Section 1, page 28, J. E. Johanson's I. C. C. No. 2037."

In paragraph 4 of defendant's (appellant) answer this allegation is admitted, and such admission is incorporated in paragraph 5 of agreed statement of facts.

In Exhibit "B" (Report of the Interstate Commerce Commission) attached as part of plaintiff's (appellee) complaint, it is found by the Commission that the rate charged was inapplicable, and that the lawful rate was 33 cents per hundred weight.[1]

■ By joining in the establishment of a through route and through rates from Boley, Oklahoma, to New Orleans, Louisiana, the appellant with the other carriers participating therein constituted their lines of railroads a unit as to such route and rate.[2]

■ Appellant admits, paragraph (c), that it authorized the assessment by the Fort Smith & Western of the joint rate established and published in the tariff under its concurrence and sanction and that said Fort Smith & Western acted as its authorized agent to the extent of collecting charges on appellee's shipments based upon a through rate legally published and in effect at time of shipment, but insists that the collection of the excess charges was the sole and individual act of the Fort Smith & Western, and that it is not legally liable therefor, either jointly or otherwise. The authority of the Fort Smith & Western as agent in the premises is not limited to the extent as contended. By publishing through rates over the through route from Boley to New Orleans, the defendant (appellant) and other carriers whose lines constituted said through route delegated to the Fort Smith & Western authority to accept shipments over said through route which included the determination as to classifications of commodities offered for transportation, and the computation of the rate thereon, and the collection of charges therefor, and operated as an invitation to the public to initiate transportation at Boley, and there to deliver commodities for transportation over the Fort Smith & Western on such through route to point of destination.

■ The contention by appellant that Fort Smith & Western was its agent for the limited purposes only of receiving shipment for transportation and collection of rates not in excess of the duly published tariffs is untenable. Accepting the benefit of the act of its agent, it cannot repudiate its responsibility for its acts in excess of its proportion of the legally applicable rate.

[1] Sinclair Prairie Oil Co. v. Ft. Smith & W. Ry. Co., 222 I.C.C. pp. 184–186; Sinclair Prairie Oil Co. v. Ft. Smith & Western Railway Co. et al., 196 I.C.C. 333; In re Rates on Refined Petroleum Products in the Southwest, 171 I.C.C. 381.

[2] Pacific Purchasing Co. v. Chicago & Northwestern Railway Co. et al., 12 I.C. C. 549; Woodward & Dickerson v. Louisville & N. R. R. Co., 15 I.C.C. 170; Louisville & N. R. Co. v. Dickerson, 6 Cir., 191 F. 705; Baltimore & O. R. Co. et al. v. Domestic Hardwoods, 62 App. D.C. 142, 65 F.2d 488; Cincinnati, N. O. & T. P. R. Co. v. Interstate Commerce Commission, 162 U.S. 184, 16 S.Ct. 700, 40 L.Ed. 935, 938; Baer Bros. Mercantile Co. v. Denver & R. G. R. Co., 233 U.S. 479, 34 S.Ct. 641, 58 L.Ed. 1055, 1062; Atlantic C. L. R. Co. v. Riverside Mills, 219 U.S. 186, 31 S.Ct. 164, 55 L.Ed. 167, 179, 31 L.R.A.,N.S., 7; Behlmer v. Louisville & N. Co., 4 Cir., 83 F. 898.

The sums actually collected by the Fort Smith & Western for the transportation of said shipments was in accordance with rates duly established, in which appellant participated, over said through route, in a legal rate not applicable to the shipments involved. The agency of the Fort Smith & Western for the defendant (appellant) and other participating carriers as to the rate actually collected may not be so separated and limited.[3]

Appellee's action of statutory origin[4] is based upon a violation of the provisions of Section 8 of the Interstate Commerce Act, 49 U.S.C.A. § 8, liability of appellant not being upon contract or the ratification of a contract, but on account of its participation in the tort complained of, to-wit, the exaction of a rate in excess of that according to the legally applicable tariff.[5]

In Illinois Powder Manufacturing Co. v. Chicago, P. & St. L. R. Co., 165 I. C. C. 127, it is said:

"While conceding joint and several liability for the collection of an unreasonable joint rate, admittedly a tortious act, it is contended that this joint and several liability does not extend to the collection of charges in excess of the applicable rate. * * * By authorizing the publication by the Chicago, Peoria & St. Louis of the joint rate of $1.285 the Louisville & Nashville impliedly authorized the agent of that carrier to act as its agent in the collection of its proportion of the freight charges. Therefore, the agent of the Chicago, Peoria & St. Louis in collecting the charges on this shipment was acting as agent jointly for the Chicago, Peoria & St. Louis and the Louisville & Nashville. In the scope of that agency he collected a sum in excess of the published rate for the account of both carriers, and both are equally responsible for this tortious act. * * *

"Neither decision [relied on][6] is in point on the question of the liability of a principal for the tortious act of an agent when acting within the express or implied scope of his authority."

In National Screw Manufacturing Company v. New York, Chicago & St. Louis R. R. Co., 155 I.C.C. 209, it is said: "It is not necessary in a complaint alleging overcharge with respect to a shipment over a route over which a joint rate was applicable thereon to name all the carriers participating in the transportation since the collection of an overcharge is a tort for which all the carriers are jointly and severally liable."

In Atlantic Coast Line R. Co. et al. v. Smith Bros., Inc., 5 Cir., 63 F.2d 747, 748, it is said: "It is the settled rule of the Commission that, 'if a through rate, joint or combination, is found unreasonable and reparation is awarded the order entered runs against the carriers, collectively, that participated in the transportation' * * *" (authorities cited[7]).

[3] Illinois Powder Manufacturing Co. v. Chicago, P. & St. L. R. Co., 165 I.C.C. 127; National Screw Manufacturing Co. v. New York, Chicago & St. Louis R. Co., 155 I.C.C. 209; Chicago, B. & Q. R. Co. et al. v. Feintuch et al., 9 Cir., 191 F. 482; Louisville & N. R. Co. v. Dickerson, 6 Cir., 191 F. 705; Texas & Pac. Railway Co., et al. v. Louisiana Oil Refining Corp., 5 Cir., 76 F.2d 465, certiorari denied 295 U.S. 767, 55 S.Ct. 926, 79 L.Ed. 1708; Atlantic Bridge Co. v. Atlantic Coast Line R. Co. et al., D.C., N.D.Fla., 56 F.2d 163; Hygrade Food Products Corp. v. Chicago, M., St. P. & P. R. Co. et al., D.C., 10 F.Supp. 767; Swift & Co. v. New York Central R. Co. et al., 2 Cir., 16 F.2d 17; Magnolia Provision Co. v. Beaumont, S. L. & W. Ry. Co., D.C., 20 F.2d 384, affirmed in Beaumont, Sour Lake & W. Ry. Co. v. Magnolia Provision Co., 5 Cir., 26 F.2d 72; Ingalls v. Maine Central R. Co., D.C., 24 F.2d 113; Baltimore & Ohio R. Co. v. Domestic Hardwoods et al., 62 App.D.C. 142, 65 F.2d 488, certiorari denied 290 U.S. 647, 54 S.Ct. 64, 78 L. Ed. 561.

[4] Louisville & N. R. Co. v. Sloss-Sheffield S. & I. Co., 269 U.S. 217, 46 S. Ct. 73, 70 L.Ed. 242.

[5] Lewis-Simas-Jones Co. v. Southern Pacific Co., 283 U.S. 654, 51 S.Ct. 592, 75 L.Ed. 1333; Glens Falls Portland Cement Co. v. Delaware & Hudson Co., 2 Cir., 66 F.2d 490.

[6] Louisville & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 46 S.Ct. 73, 70 L.Ed. 242; T. M. Partridge Lumber Co. v. Michigan Central R. Co., 8 Cir., 26 F.2d 615; Chicago, B. & Q. R. Co. et al. v. Feintuch et al., 9 Cir., 191 F. 482; Louisville & N. R. Co. v. Dickerson, 6 Cir., 191 F. 705.

[7] Pinson Brokerage Co. v. Columbus & G. R. Co., 89 I.C.C. 125, 126; Hansen-Peterson Co. v. Atchison, T. & S. F. R. Co., 113 I.C.C. 575; Illinois Powder Mfg. Co. v. Chicago, P. & St. L. R. Co., 165 I.C.C. 127; Louisville & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 46 S.Ct. 73, 70 L.Ed. 242;

In Texas & Pac. R. Co. et al. v. Louisiana Oil Refining Corp., 5 Cir., 76 F.2d 465, certiorari denied 295 U.S. 767, 55 S.Ct. 926, 79 L.Ed. 1708, the record not disclosing as to which carrier collected the excessive rate nor whether all the carriers participated in the distribution of the excess, the judgment of the trial and appellate court, both of which held all the carriers jointly and severally liable, was sustained.

In Hygrade Food Products Corp. v. Chicago, M., St. P. & P. R. Co. et al., D.C., 10 F.Supp. 767, the rates charged and collected being in excess of the lawful rates, and Indiana Harbor Belt R. R. Company being the switching carrier at Chicago in handling the shipments between the termini of the initial and final carrier, and not having participated in fixing the combination rates, and its charge being absorbed by the two main carrying roads under the tariff provisions, it was held liable, as it received compensation out of the charges made by the two main carriers, and to be a proper party. Both the Chicago, Milwaukee, St. Paul R. R. Company (initial carrier), and the Indiana Harbor Belt Company (switching carrier) were held liable to the plaintiff to the same extent as the final carrier.

In Baltimore & Ohio R. Co. v. Domestic Hardwoods et al., 62 App.D.C. 142, 65 F. 2d 488, infra, judgment was held to be recoverable against all the through carriers, either jointly or severally. Certiorari denied, 290 U.S. 647, 54 S.Ct. 64, 78 L.Ed. 561.

Authority cited with reliance on part of appellant did not involve question of exaction of rates in excess of published tariffs, but of discrimination between shippers of petroleum oil in barrels as related to the rates upon corresponding shipments in tank cars.[8]

Other cases cited by appellant involved question as to rates published and maintained being unreasonable and unjust.[9]

State cases cited by appellant related to excessive charge arising by reason of misrouting the shipment,[10] or to separate shipping contracts, not to such continuous or through shipment,[11] or to where the rate exacted by the final carrier was in excess of that given by the initial carrier which neither contracted for said excess nor participated in the distribution thereof nor adopted or ratified act of such final carrier, nor was any interstate rate, as contained in any published tariff filed pursuant to the provisions of the Interstate Commerce Act, involved.[12]

■ The Texas & Pacific Railway Company, final carrier, contends that in its railway accounting procedure, in February, 1929, after the shipments had been made, discovering the overcharge in the adjustments of its interline accounts, it made disposition of the total freight charges received by Fort Smith & Western to all participating carriers, and debited appellant for its proportion of said overcharge, and that it (T. & P. R. Co.) ultimately thereby realized only that portion of such freight charge to which it is properly entitled out of the joint rate properly applicable on said shipments, and for that reason cannot be held liable to appellee herein. The facts as stipulated show that appellant received credit for its proportionate part of the total charges, including the excess, and that it at no time offered to return to appellee any part thereof. The refund as alleged by Texas & Pacific to the Fort Smith & Western, whether by bookkeeping credit or cash remittance, is not disclosed.

As to statute of limitation, shipments involved were delivered to the Fort Smith & Western Railway Company at Boley, Oklahoma, on September 10 and 13, 1928, and on August 13, 1930, and September 8,

---

News Syndicate Co. v. New York Central R. Co., 275 U.S. 179, 187, 48 S.Ct. 39, 72 L.Ed. 225; Lewis-Simas-Jones Co. v. Southern Pac. Co., 283 U.S. 654, 51 S. Ct. 592, 75 L.Ed. 1333; Kanawha Black Band Coal Co. v. Chesapeake & O. R. Co., 107 W.Va. 469, 148 S.E. 855.

[8] Penn Refining Co. v. Western N. Y. & P. R. Co., 208 U.S. 208, 28 S.Ct. 268, 52 L.Ed. 456.

[9] Louisville & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 46 S.Ct. 73, 70 L.Ed. 242; News Syndicate Co. v. New York C. R. Co., 275 U.S.

179, 48 S.Ct. 39, 72 L.Ed. 225; Lewis-Simas-Jones Co. v. Southern Pac. Co., 283 U.S. 654, 51 S.Ct. 592, 75 L.Ed. 1333; Great Northern R. Co. v. Sullivan, 294 U.S. 458, 55 S.Ct. 472, 79 L.Ed. 992.

[10] Siggins v. Chicago & N. W. R. Co., 153 Wis. 122, 140 N.W. 1128.

[11] McManus v. Chicago Great Western R. Co., 156 Iowa 359, 136 N.W. 769; Id., 138 Iowa 150, 115 N.W. 919, 128 Am.St.Rep. 180.

[12] Chicago, R. I. & T. R. Co. v. Henderson, Tex.Civ.App., 73 S.W. 36.

1930 statements introduced in the record as Exhibits "I", "II" and "IV" were transmitted to the Interstate Commerce Commission by Fort Smith & Western Railway Company, initial carrier. Exhibit "IV" should have been designated as Exhibit "III", as Exhibit "IV" is the statement referred to as Exhibit "III" in paragraph VIII.[13] Said statements were treated by the Commission as a complaint and registered on September 25, 1930, under Special Docket No. 138638.

Formal complaint was filed by appellee with the Interstate Commerce Commission on March 21, 1936, and on April 27, 1937, the order sued on was made and entered.

█ The instant action was commenced in the state district court of Tulsa County March 3, 1938, and duly removed to the proper United States District Court. The statements filed with the Interstate Commerce Commission by Fort Smith & Western Railway Company on August 13, 1930, and September 8, 1930, complying with Rule III, infra, were sufficient to invoke the jurisdiction of that Commission and to toll the statutes of limitations.

Paragraph 1, Section 17 (Title 49 U.S.C. §§ 16 and 17 as amended, 49 U.S.C.A. §§ 16, 17), Interstate Commerce Act, provides: "The commission may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice. * * * The commission may, from time to time, make or amend such general rules or orders as may be requisite for the order and regulations of proceedings before it * * * including forms of notices and the service thereof, which shall conform, as nearly as may be, to those in use in the courts of the United States. * * *"

By this authority the Commission prescribed Rule III, paragraph (f),[14] and Paragraph (g).[15] 4 Interstate Commerce Acts Annotated, pages 3444 and 3445.

Accompanying the statements filed with the Commission on August 13, 1930 and September 8, 1930, were the receipted paid freight bills covering the seven tank carloads of gasoline, and showing the car number, initial, date shipped, weight, freight collected, date charges paid, and total amount of reparation involved, and also contained names of all carriers participating in the shipment, as per photostat copies of letters and statement attached to Stipulation of Facts in the trial court.

Appellant directs attention to fact that it was designated in said statement by initials. In the tariffs involved herein appellant was referred to by initials and in Paragraph VIII of Agreed Statement of Facts it was expressly stipulated that said

---

[13] See Agreed Statement of Facts in Transcript.

[14] "(f) (Special Docket Applications). Carriers willing to pay damages for violations of the act should make application in the form prescribed by the commission for authority to pay. Such applications will be filed on the special docket under serial number, and, if granted, orders to that effect will be entered on the special docket. Such application, when not made upon informal complaint filed with the commission, must be filed within the statutory period and will be deemed the equivalent of an informal complaint and an answer thereto admitting the matters stated in the application. If a carrier is unable to file such application within the statutory period and the claim is not already protected from the operation of statute by informal complaint, a statement setting forth the facts may be filed by the carrier within the statutory period. Such statement will be deemed the equivalent of an informal complaint filed on behalf of the shipper and sufficient to stay the operation of the statute."

[15] "(g) (Six Months' Rule for Resubmission on Informal or Formal Docket). If an informal complaint for recovery of damages cannot be disposed of informally, or is denied on the informal docket, or is by complainant withdrawn from further consideration, the parties affected will be so notified in writing by the commission. In any such cases the matter will not be reconsidered unless, within six months after the date of mailing such notice to complainant, it is resubmitted on the informal docket or formal complaint is filed. Such resubmission or filing will be deemed to relate back to the date of filing the informal complaint, but reference to that date and the commission's file number covering the informal complaint must be made in such resubmission or in the formal complaint filed. If within such six months the matter is not so resubmitted or formal complaint filed the complainant will be deemed to have abandoned the complaint, and no complaint for recovery of damages based on the same cause of action will thereafter be placed on file or considered unless itself filed within the statutory period."

statement contained the names of all carriers participating in the shipments, all such carriers being therein designated only by initials.

In its report attached to appellee's (plaintiff) complaint as Exhibit "B", 222 I.C.C. pp. 184–186, supra, the Commission found:

"The initial carrier filed a statement with us identifying the shipments for the purpose of tolling the statutes. The statement was registered on our Special Docket September 25, 1930. On October 24, 1935, the special file docket was closed."

The Commission, in accordance with its uniform holdings,[16] treated the statement filed "as the equivalent of an informal complaint filed on behalf of plaintiff and as sufficient to stay the operation of the statute."

Congress authorized the Interstate Commerce Commission to conduct its proceedings in such manner as would best conduce to the proper dispatch of business and to the ends of justice, and to make or amend such general rules or orders as may be requisite for the regulation of proceedings before it.

Appellant was a party to the proceedings before the Interstate Commerce Commission under special docket No. 138638, registered September 25, 1930, and had notice thereof. It has not raised the question as to the sufficiency of notice to appellant as to proceedings under special docket No. 138638. It has called attention however, to the fact that written notice of the filing and registration of said statements by Fort Smith & Western was given appellant on June 13, 1935. The fact that appellant was not notified in writing by the Interstate Commerce Commission prior to June 13, 1935 does not prevent the statute of limitations from being tolled by filing the informal complaint.[17]

In Baltimore & O. R. Co. v. Domestic Hardwoods, supra, the complaint was not filed within the three-year period with the Commission but prior to expiration of six months from the rejection of the claim by the Canadian Pacific Railway Company, it having been filed (within) the three-year period with the railway company. The contention having been made that the filing of the claim with the Canadian Pacific was not such a filing as would bring into operation the six months' extension under 49 U.S.C.A. § 16(3), the court said [62 App. D.C. 142, 65 F.2d 491]: "In view of this, we think it not going too far to say that notice to one of the carriers was notice to all. The act requires no other notice than that which was given."

In Missouri, K. & T. R. Co. v. Ward, 244 U.S. 383, 37 S.Ct. 617, 619, 61 L.Ed. 1213, it is said: "For the purpose of fixing the liability, the several carriers must be treated, not as independent contracting parties, but as one system; and the connecting lines become in effect mere agents, whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier. Atlantic Coast Line R. Co. v. Riverside Mills, 219 U.S. 186, 206, 31 S.Ct. 164, 55 L.Ed. 167, 182, 31 L.R.A.(N.S.) 7; Galveston H. & S. A. R. Co. v. Wallace, 223 U.S. 481, 491, 32 S.Ct. 205, 56 L.Ed. 516, 523."

This case involving liability under a through bill of lading, the principle is analogous when considering shipments made under through rates over through routes.

In Rubin v. Northwestern R. Co. of South Carolina, 133 S.C. 41, 130 S.E. 549, the action being for damages to a shipment of household goods from New York to Summerton, South Carolina, the court said: "The evidence shows that the goods were delivered by the plaintiff to the initial

---

[16] Gulf State Terminal & Transport Co. v. Texas & Pac. R. Co., 186 I.C.C. 235; Id., 178 I.C.C. 655; Wyoming Sugar Co. v. Director General, 88 I.C.C. 213; Gamble-Robinson Comm. Co. v. St. Louis & S. F. R. Co., 19 I.C.C. 114; Sanguinetti v. Union Pac. R. Co., 39 I.C.C. 515. See, also, Louisville & N. R. Co. v. Dickerson, 6 Cir., 191 F. 705; Dickerson v. Louisville N. R. Co., C.C., 187 F. 874; Arcadia Mills v. Carolina, C. & O. Ry., D.C., W.D.S.C., 293 F. 639; Louisville & N. R. Co. v. Sloss-Sheffield S. & I. Co., 5 Cir., 295 F. 53, affirmed 269 U.S. 217, 46 S.Ct. 73, 70

L.Ed. 242; Chicago & E. I. R. Co. v. United States, D.C., N.D.Ill., 43 F.2d 987, 988; United States v. Interstate Commerce Commission, 60 App.D.C. 267, 51 F.2d 429; Chicago R. I. & P. R. Co. v. United States, 274 U.S. 29, 47 S.Ct. 486, 71 L.Ed. 911; Lewis-Simas-Jones Co. v. Southern Pac. Co., 283 U.S. 654, 51 S.Ct. 592, 75 L.Ed. 1333.

[17] M. C. Peters Mill Co. v. Director General, 129 I.C.C. 331; Endicott Forging & Mfg. Co. v. Erie R. Co., 171 I.C. C. 785; Baltimore & O. R. Co. v. Domestic Hardwoods, 62 App.D.C. 142, 65 F.2d 488.

carrier in good condition, and there was sufficient evidence to carry the case to the jury; that the goods were damaged when delivered to the plaintiff, whether by initial carrier or terminal carrier is immaterial, as initial carrier and terminal carrier were agents for each other and notice to one was notice to the other. Northern Pac. Railroad Co. v. Wall, 241 U.S. 87, 36 S.Ct. 493, 60 L.Ed. 905."

In briefs it is stated, and not disputed, that as to the question of sufficiency of notice to appellant of the informal proceedings before the Interstate Commerce Commission, the same counsel for appellant appeared before it for the carriers, not raising question as to notice, and appellee insists that the question of the sufficiency of notice to appellant to toll the statute is not raised under this record and the fact that it has submitted the matter in its brief is not an indication that it has waived such failure to raise same.

The judgment of the trial court is affirmed.